417 A.2d 1270

**COMMONWEALTH of Pennsylvania**

v.

**Freddy McCUTCHEN, Appellant.**

Superior Court of Pennsylvania.

Argued July 10, 1979.

Filed Dec. 28, 1979.

Joseph Danella, Philadelphia, for appellant.

Sheldon M. Finkelstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

NIX, Justice:

Appellant Freddy McCutchen, who was fifteen years of age at the time of the crime, was twice convicted by a jury of murder in the first degree arising out of a homosexual

---

* Justice Robert N. C. Nix, Jr. of the Supreme Court of Pennsylvania and Judge I. Martin Wekselman of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

attack upon a six year old boy in Philadelphia.[1] The Pennsylvania Supreme Court reversed the first conviction because the trial court erred in refusing to suppress McCutchen's confession. *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 696 (1975), cert. denied 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976) (*McCutchen I*). McCutchen was subsequently retried and again found guilty of first degree murder. The present case is the direct appeal from McCutchen's retrial. For the reasons set forth below, we are constrained to conclude that McCutchen was again denied his constitutionally guaranteed right to a fair trial, and therefore reverse the judgment of sentence and remand the case for a second retrial.

During the testimony of the medical examiner, the jury was shown two color slides of the victim's body. In determining the admissibility of photographic evidence depicting a murder victim's body, we are bound by the rules set forth by the Supreme Court in *Commonwealth v. Chacko*, 480 Pa. 504, 506, 391 A.2d 999, 1000 (1978) and its predecessors:

> "Normally the general rule is that testimony is admissible if it is relevant and competent. This basic rule is equally applicable to the admission of photographs or other types of demonstrative evidence. . . . However, where the photograph possesses gruesome or inflammatory qualities likely to inflame the passions of the viewer, our cases require the application of the 'essential evidentiary value' balancing test."

Therefore, our initial inquiry must determine whether the photographs in the instant case possess gruesome or inflammatory qualities likely to inflame the passions of the jury. *Id.*, 480 Pa. at 507, 391 A.2d at 1000, quoting from *Commonwealth v. Schroth*, 479 Pa. 485, 489, 388 A.2d 1034, 1036 (1978).

1. Appellant was also convicted in his first trial of sodomy. This conviction was reversed by the Superior Court, *Commonwealth v. McCutchen*, 245 Pa.Super. 56, 369 A.2d 291 (1976), and the charge was nolle prossed by the prosecution prior to appellant's second trial.

■ The first color slide presented the jury with a frontal view of the victim's naked body from the hips upwards. The victim clearly has a large gaping deep gash on the top of his head exposing the blood-red interior of the skull; matted hair and scalp are pulled back from the wound. There is a large gash above the victim's left eye from his forehead to his cheek. The interior of this gash is plainly visible and blood-red in color; the skin surrounding the gash is visibly bruised and discolored. The victim has severe red and brown bruises and lacerations of the entire right side of his face and torn skin is clearly visible. His mouth is swollen and discolored with lacerations surrounding it. The victim's mouth is open showing that his teeth have been knocked out. His upper left arm and upper right chest are bruised and lacerated.

The second color slide was a close-up view of the victim's anus in which the fingers of an assistant are pulling apart the victim's buttocks to enable a clear view of the anal area. The victim's anus is obviously torn and ripped open in four places and the outer walls of the anus are jagged pieces of flesh. The interior of the anus is darkly stained. The small stature of the victim is emphasized by comparison to the assistant's fingers.

■ It is without doubt that these two color slides depicted an exceedingly gruesome and inflammatory subject matter. "Having found the [slides] to be inflammatory, we must next determine whether they were of essential evidentiary value to the prosecution's case." *Commonwealth v. Chacko*, 480 Pa. at 507, 391 A.2d at 1001. The Commonwealth justifies the use of these slides because they demonstrated the severity of the attack evidencing an intention to kill the victim. We believe that the use of these slides was not necessary to supplement the otherwise specific testimony of the medical examiner and other witnesses concerning the victim's wounds. In our judgment, this evidence, without the use of the color slides, was more than adequate to show the savagery and brutality of the assault and strongly supported an inference of a specific intent to kill.

■ The testimony of the medical examiner culminated a series of witnesses who testified concerning the extent and nature of the victim's wounds. Three police officers and a medical technician had described in detail the wounds, and had identified four color photographs of decedent's wounds and one black and white photograph of the victim's anal area.[2] The medical examiner also described to the jury in graphic detail the battered and gruesome condition of the victim's body. After all of this testimony, which is not the subject of this objection, the Commonwealth sought to introduce into evidence and show to the jury 30 color slides of the victim. In the course of an in-camera hearing concerning these slides, the medical examiner stated that the wounds were not beyond his power of description. The trial judge allowed two of these slides to be shown to the jury following a cautionary instruction to the jury.

We believe that this point is controlled by the reasoning of the Supreme Court in *Commonwealth v. Scaramuzzino*, 455 Pa. 378, 383, 317 A.2d 225, 227 (1974):

While we do not condemn the use of photographs to aid the fact-finder in understanding a witness' testimony, *Commonwealth v. Snyder*, 408 Pa. 253, 256, 182 A.2d 495, 496 (1962), they should not be resorted to where the witness can clearly convey the facts to the jury without their use. These slides were simply cumulative to the pathologist's testimony as to the cause, position, number and severity of the wounds. In [*Commonwealth v. Powell*, 428 Pa. 275, 241 A.2d 119 (1968)] we said "assuming the relevance of the photographs with respect to appellant's intent to commit grievous bodily harm, nowhere is it illustrated to our satisfaction that the pathologist could not have adequately and effectively testified without the use of these photographs." *Commonwealth v. Powell, supra*, 428 Pa. at 279, 241 A.2d at 121.

2. While these photographs had been identified, admitted and referred to by the witnesses during their testimony, no attempt had been made to display them before the jury.

■ The fact that cautionary instructions were given to the jury before the slides were shown to them, does not cure the prejudice or wipe away the taint created in the jurors' minds by these slides. As the Supreme Court stated in *Commonwealth v. Garrison*, 459 Pa. 664, 669, 331 A.2d 186, 188 (1975):

> [W]e cannot accept the Commonwealth's argument that the cautionary instructions of the court relating to this evidence or the limitation placed upon the viewing time adequately assured against the prejudice created. It is unrealistic to believe, even after a limited view, that the horror engendered by these slides could ever be erased from the minds of the jurors or that its prejudicial effect could be avoided by cautionary instructions.

■ The impropriety of the introduction of these slides becomes more apparent when it is noted that the Commonwealth had available for their use black and white photographs depicting the same injuries but with much less emotional impact upon the jurors. And, when viewed in the context of the entire trial strategy of the prosecutor, the introduction of these slides was a clearly improper attempt to appeal to the passions of the jurors and to win a conviction on the basis of the strong emotions present in the case. During voir dire, the prosecutor presented the panel of potential jurors with a nineteen-inch by sixteen-inch portrait of the face of the six-year-old victim. This large portrait had been made by the Commonwealth from a three-by-four-inch school photograph. This portrait was supposedly shown to the prospective jurors for indentification purposes. It stretches credulity to accept the explanation that the viewing of a portrait of the six-year-old victim by a panel chosen from a city the size of Philadelphia is necessary to eliminate the possibility that a juror ultimately selected might have known the victim.

■ The obvious motive was to place before the panel the countenance of the victim prior to the assault, to enhance the impact of those color slides depicting the battered face and body of the decedent. In these circumstances, "it is

evident that the Commonwealth explicitly sought to create sympathy for the victim and his family and to inflame the jury against appellant. We condemn such trial tactics." *Commonwealth v. Story*, 476 Pa. 391, 399–401, 383 A.3d 155, 159 (1978).

Accordingly, we find that the trial judge abused his discretion in permitting the introduction into evidence and the viewing by the jury of these color slides. Consequently, we must reverse the judgment of sentence and remand the case for a new trial.

·Although we agree that appellant's claim regarding the photographic slides is meritorious, we reject his claimed violation of Criminal Procedure Rule 1100. The rule 1100 claim has several facets. The Pennsylvania Supreme Court decided *McCutchen I* on July 7, 1975. The Commonwealth was then required to bring appellant to trial within one hundred and twenty (120) days. See Rule 1100(e)(2). By agreement of the parties, the rule 1100 run date was extended to January 14, 1976. On December 5, 1975, the Commonwealth filed a Petition to Extend the run date of rule 1100 pursuant to 1100(c) and alleging, inter alia:

5. Pursuant to Rule 1100 of the Pa.R.Crim.P., the Commonwealth must re-try the defendant on or before January 14, 1976, unless an extension of time is granted by this Court.

6. The Commonwealth is currently in the process of filing in the United States Supreme Court a petition for writ of certiorari to the Pennsylvania Supreme Court to review their decision in the instant case. That petition will be filed on or before December 15, 1975. Under the rules of the United States Supreme Court, McCutchen will be entitled to thirty (30) days in which he may respond to the Commonwealth's petition. Therefore, the certiorari petition cannot be ruled upon prior to January 14, 1976.

7. If the Commonwealth should re-try the defendant prior to January 14, 1976, the petition for certiorari would be rendered moot, and resolution of an important legal issue aborted.

The trial judge granted this petition after a hearing and order that trial commence within forty-five (45) days following the final disposition of the Commonwealth's appeal to the United States Supreme Court. The Commonwealth filed its petition for certiorari on December 15, 1975, and the Supreme Court denied it on February 23, 1976.

■ The record amply demonstrates that the Commonwealth's petition for extension of time was filed in a timely fashion and prior to the expiration of the agreed-to period on January 14th. We must reject appellant's contention that the Commonwealth should not have been granted an extension because it did not file its petition until the end of the ninety (90) day period of Rule 22 of the Rules of the United States Supreme Court. We see no reason why this court should limit the right of the Commonwealth to seek certiorari in the United States Supreme Court, a right conferred by statute, see 28 U.S.C. § 1257(3), where the Commonwealth has not violated the requirements of our own procedural rules or those of the United States Supreme Court. The procedure employed in the present case is identical to that used in *Commonwealth v. O'Shea*, 465 Pa. 491, 494, 350 A.2d 872, 873 (1976), and support for our decision can be found in *Commonwealth v. Norman*, 262 Pa.Super. 45, 396 A.2d 476, 477 (1978).

■ Next, we do not agree with appellant's novel contention that the Commonwealth had waived its right to seek a section (c) extension by its participation in various pre-trial proceedings prior to the date it sought the extension. This position has support neither in the text of rule 1100 nor in our case law.

■ Finally, we reject appellant's contention that his trial did not start prior to the rule's extended run date of April 8, 1976 following the denial of the petition for certiorari. The record reveals that on April 6 appellant was ordered by the trial court to be arraigned, the prospective jury panel was sworn, and a plea of not guilty was entered for appellant. On April 7 suppression proceedings begun on March 30

were completed and a suppression order was entered. On April 8, the voir dire process began with the trial judge addressing the jurors and putting its question to the entire panel. The prosecutor was permitted to address the panel and defense counsel declined the opportunity to so address the panel. Although questioning of individual jurors did not take place until April 12, the voir dire had commenced on April 8. The case law is clear that trial begins for rule 1100 purposes when voir dire begins. *Commonwealth v. Martin,* 479 Pa. 609, 388 A.2d 1361 (1978); *Commonwealth v. Wallace,* 475 Pa. 27, 29, 379 A.2d 558, 559 (1977); *Commonwealth v. Lamonna,* 473 Pa. 248, 255, 373 A.2d 1355, 1358 (1977); *Commonwealth v. Perkins,* 473 Pa. 116, 138, 373 A.2d 1076, 1087 (1977). Appellant's contention must therefore fail.

The judgment of sentence is reversed and the case is remanded for a new trial.

WIEAND, J., files a concurring and dissenting statement.

WIEAND, Judge, concurring and dissenting:

Although in full agreement with the majority's disposition of appellant's Rule 1100 claim, I find that I am unable to agree that the photographs of the victim were improperly received. The manner in which death was inflicted upon the victim and the degree of the killer's guilt were important issues in this case. Witnesses, no matter how articulate, could not begin to verbalize adequately the horrible and brutal nature of the crime committed against the six year old victim. To decide these issues the jury should have the best and most accurate evidence available in order to minimize the possibility of injustice caused by error in the fact finding process. The photographs were the best and most accurate evidence available. I would not keep such evidence away from the jury merely because it depicts how horrible and brutal appellant's crime was. Where the degree of guilt is an issue, moreover, the decided cases do not compel the exclusion of photographs which accurately depict the manner in which death was caused. Cf. *Commonwealth v. Chacko,* 480 Pa. 504, 391 A.2d 999 (1978); *Commonwealth v. Scaramuzzino,* 455 Pa. 378, 317 A.2d 225 (1974).

106

Therefore, I must respectfully dissent. I find no abuse of the trial court's discretion in the admission of photographs and would affirm the judgment of sentence.