675 A.2d 1221

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Brian SMITH, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1995.

Reargued March 6, 1996.

Decided May 22, 1996.

226

228

Gerald Deady, West Pittston, Brian Smith, Chester, for Appellant.

Peter Paul Olszewski, and Scott Gartley, Wilkes Barre, Robert A. Graci, Office of Attorney General, Harrisburg, for Appellee.

Before FLAHERTY, ZAPPALA, CASTILLE, NIGRO and NEWMAN, JJ.

230

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

FLAHERTY, Justice.

Following a jury trial in the Court of Common Pleas of Luzerne County, appellant, Brian Smith, was found guilty on September 17, 1991 of murder of the first degree of a five-month-old boy. A sentencing hearing took place after which the jury returned a verdict of death.[1] The court imposed the death sentence. The present direct appeal ensued.

■ This court is required in capital cases to review the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) rehearing denied, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The applicable standard of review is whether, viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, a jury could find every element of the crime beyond a reasonable doubt. *Commonwealth v. Bryant*, 524 Pa. 564, 567, 574 A.2d 590, 592 (1990).

■ To prove murder of the first degree, the Commonwealth must demonstrate that the defendant killed with a specific intent to kill. 18 Pa.C.S. § 2502(d). The Commonwealth must show: 1) that a human being has unlawfully been killed; 2) that the defendant did the killing; and 3) that the killing was done in a willful, deliberate and premeditated manner. *Commonwealth v. Mitchell*, 528 Pa. 546, 551, 599 A.2d 624, 626 (1991). If a deadly force is knowingly applied by the defendant to another, the specific intent to kill is as evident as if the defendant stated the intent to kill at the time the force was applied. *Commonwealth v. Meredith*, 490 Pa. 303, 311, 416 A.2d 481, 485 (1980).

■ The record reflects that the evidence was more than sufficient to support a verdict of murder of the first degree.

---

1. The jury found that two aggravating circumstances, i.e., the murder victim was under the age of twelve and was tortured, outweighed two mitigating circumstances, i.e., the appellant's remorse and his mental state.

On March 28, 1992, Dawn Medashefski, the woman with whom appellant lived, Ryan Leahy, Medashefski's five-month-old son, and appellant visited with Maura Ward at Ward's residence. Ward and Medashefski left Ward's residence to go to a bar and appellant remained at the residence with Ms. Ward's four sleeping children and Ryan. Appellant called Medashefski at the bar twice, after which she and Ward returned to the residence. Upon Medashefski's return, appellant handed her Ryan, who was limp and not breathing. Appellant had called an ambulance which arrived shortly and transported the child to the hospital. The child was put on life support; however, it was determined that the child was brain dead and, thereafter, baby Ryan was removed from life support.

After appellant had received *Miranda* warnings, he gave to a detective at the Geisinger Medical Center in Danville a 45–minute statement in which he detailed three separate accounts of what happened to Ryan. He initially claimed that he had consumed four to five beers at 4:00 p.m. He said he napped and awoke to hear the baby gasping, face down on the floor and with blood in his mouth, and to see Ward's four-year-old running up the stairs. He said he tried resuscitation measures and then called Medashefski and an ambulance.

After the detective told appellant that his story was not consistent with the medical evidence, appellant said he had consumed eight beers and played roughly with the child. He explained that while sitting on the couch, he had been tossing Ryan in the air and leaned too far back so that the baby hit the right side of his head on the back of the couch. He then put Ryan in a car seat and, as appellant let go, Ryan fell backwards and struck his head on the floor, which is linoleum over concrete.

The detective again told appellant that his story was not consistent with the medical evidence and appellant gave a third account. He said he was playing with the child and began to get rough with him. Appellant was standing in front of the couch and dropped the baby on the couch in a standing

position, and then threw the baby in the air. The rest of the statement was consistent with the second statement.

The expert testimony at trial contradicted the appellant's claim that the baby's injuries were accidental and the result of rough play. Dr. James Caggiano testified that his examination of the baby revealed that the part of the baby's brain that controlled breathing had suffered trauma, that the left forehead and left side of the head had bruises, and that fluid was inside the baby's brain. He also testified that as a result of the infant's broken clavicle,[2] the baby would have experienced pain every time he was picked up, shaken or struck in the head. Also, an expert in the field of ophthalmology testified as to the effect of appellant's beating on the baby's eyes. He stated that the blood vessels in the baby's eyes had exploded, causing blood to pour into both corneas and that the amount of force necessary to cause such injuries would be extremely severe.

The coroner, Dr. George E. Hudock, Jr., who performed the autopsy testified that he found evidence of bone fractures and injuries to the head and that the baby sustained substantial pain. He testified that the baby's ribs contained breaks which occurred the day before death and that the baby's left clavicle had a fracture which was several weeks old. He concluded that the cause of death was "closed head injury with extensive epicranial and subarachnoid hemorrhages," that six to ten blows were inflicted on the baby's head, that the blows were on at least forty percent of the baby's head[3] and that it would have taken more than five minutes to inflict those injuries.

Dr. Hudock also testified that the baby experienced substantial pain. Dr. Hudock compared beating to other causes of death, e.g., shooting, stabbing, etc., and stated that beating is the one that causes the most pain. He also testified that

2. An expert in the field of pediatric radiology testified at trial that the victim had suffered a fractured clavicle at approximately two to three weeks of age.

3. A forensic pathologist testified that Ryan Leahy sustained at least six to seven and quite possibly eight separate impacts to the head.

between fifteen minutes and one hour elapsed before the five-month-old baby stopped feeling pain.

The infliction of these injuries demonstrates a willful, premeditated, and deliberate killing by a fully developed adult man of a helpless five-month-old infant boy. Any reasonable human being would realize that these injuries would cause death to such a young infant. The evidence is more than sufficient to demonstrate that appellant committed the death-producing acts and had, at the time of the killing, a specific intent to kill the infant. Here, viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, a jury could have found each element of an intentional killing beyond a reasonable doubt.

■■■ Appellant argues that trial counsel was ineffective from the initial representation through the penalty phase. According to *Commonwealth v. Pierce,* 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987) and its progeny, the defendant must demonstrate: 1) that the underlying claim is of arguable merit; 2) that counsel's performance was unreasonable; and 3) that counsel's ineffectiveness prejudiced defendant. While an evidentiary hearing is not mandated in every case that ineffectiveness of counsel is raised, the record reflects that an evidentiary hearing was held on appellant's claim that counsel was ineffective and all of appellant's claims were deemed meritless.

■■■ Appellant's first contention is that trial counsel's performance was so deficient as to be no representation at all and, therefore, that prejudice should be presumed. Where a review of the record reveals that counsel's representation was deficient, prejudice is not presumed; rather, defendant must demonstrate actual prejudice in individual instances. *Commonwealth v. Williams,* 532 Pa. 265, 274, 615 A.2d 716, 720 (1992). This claim is meritless.

■■■ Appellant's second contention is that trial counsel was ineffective at the pre-trial stages of the proceedings. Appellant argues that counsel was ineffective in failing to have a stenographer present to transcribe the notes of testimony

from the preliminary hearing. Counsel indicated that, instead of using a stenographer, he took notes and that these notes allowed him to fully and fairly cross-examine the witnesses at trial. Appellant has failed to demonstrate that counsel erred in failing to have a stenographer present to transcribe the preliminary hearing or, in any event, that such failure caused him prejudice.

Appellant also argues that counsel was ineffective in failing to conduct "meaningful discovery" and to pursue insanity, mental deficiency or intoxication defenses based on the information contained in the discovery materials. Counsel testified that evidence which the Commonwealth referred to at trial was received by the defense sufficiently in advance of trial to permit adequate preparation. Further, the record reflects that appellant admitted that counsel was very familiar with the contents of the discovery binder obtained from the Commonwealth. Finally, appellant has failed to establish that any of the claimed defenses had a chance of success. Appellant's claim has no merit.

Appellant then argues that counsel erred by failing to file an omnibus pre-trial motion to suppress the three inconsistent statements provided by appellant. The mere failure to file a suppression motion does not constitute ineffectiveness. *Commonwealth v. Stoyko*, 504 Pa. 455, 465 n. 2, 475 A.2d 714, 720 n. 2 (1984). In appellant's case, counsel testified that he thoroughly discussed the matter with appellant, that appellant acknowledged that the statements were voluntary, and that there were no grounds for a suppression motion. Further, in light of the fact that appellant received proper *Miranda* warnings and signed a waiver of rights form before giving his statements, appellant has not indicated how a suppression motion would have been successful. His claim lacks any merit.

Appellant's third contention is that counsel was ineffective during voir dire for not objecting to the trial court's suggestion that the jury avoid media accounts of the trial. The record reflects that the trial court, at the beginning of

voir dire, "suggested" that the entire panel avoid the media and that counsel believed that the jurors were adequately instructed to do so. Appellant called no members of the jury panel to support his claim that a "suggestion" meant something less to the jurors than a court "instruction." This claim is meritless.

Appellant then argues that counsel was ineffective for failing to move for sequestration or a change of venue or venire. The mere existence of pre-trial publicity does not warrant a presumption of prejudice which would require a change of venue, a change of venire, or sequestration. *Commonwealth v. Gorby*, 527 Pa. 98, 108, 588 A.2d 902, 906 (1991). Instead, a defendant must show that the case is the subject of unusual or prejudicial publicity or that the jurors are subject to extraneous influences or pressures. *Id.* In appellant's case, counsel testified that he was aware of no extraordinary publicity concerning the trial and that the news accounts provided nothing to support such motions. Further, appellant offered no evidence at the evidentiary hearing to suggest that extraordinary publicity existed. This claim is without any merit.

Appellant also argues that counsel was ineffective when questioning prospective jurors, and using peremptory challenges instead of challenging jurors for cause and striking jurors who were against the death penalty. Counsel, an experienced attorney who had been picking juries for twenty years, testified at the evidentiary hearing that he believed the ultimate jury panel was fair. He explained there were many reasons why he challenged or struck potential jurors who may have also been opposed to the death penalty. One reason was that he selected jurors he thought would be sympathetic to appellant. Also, the record reflects that appellant failed to establish at the evidentiary hearing that he was not given a fair, competent and impartial jury based on trial counsel's tactics. This claim is meritless.

Appellant's fourth contention is that counsel was ineffective during the trial stage. He first argues that counsel

should have objected to testimony about appellant's prior abusive acts after the trial court had ruled such evidence admissible. Evidence concerning the previous relations between a defendant and a homicide victim or a defendant's prior threatening statements is relevant and admissible for the purpose of proving ill will, motive or malice. *Commonwealth v. Ulatoski,* 472 Pa. 53, 60–61, 371 A.2d 186, 190 (1977); *Commonwealth v. Bryant,* 524 Pa. 564, 573, 574 A.2d 590, 595 (1990). In appellant's case, the Commonwealth offered testimony from four witnesses in order to demonstrate motive and malice. This testimony demonstrated that appellant had abused the baby before: by throwing the baby boy on the couch, into a car seat, and headfirst into a bassinet; by smacking and punching him; by shaking and bruising him; and by swearing at him. The testimony also demonstrated that appellant had physically and emotionally abused the baby's mother, Medashefski. This testimony was also relevant because it contradicted appellant's suggestion that the baby's injuries were accidental. Counsel testified he had raised the issue of admissibility of abuse testimony in his brief but that, once the trial court ruled on the issue, he did not further object on the record because he believed that the trial court's ruling was correct. Further, he did not want to highlight to the jury some of the evidence by objecting to it. Appellant has failed to demonstrate that any of the referenced evidence was inadmissible or that counsel erred. There is no merit to this claim.

▆▆▆▆▆▆ Appellant also argues that counsel was ineffective because he failed to object when the prosecutor said in his statements that appellant had lied, because he failed to make an opening statement, and because he conceded that he, appellant, caused the injuries to the baby. A new trial is warranted where the prosecutor's language is such that its unavoidable effect prejudices the jury, forming in their minds fixed bias and hostility toward the defendant so they cannot weigh the evidence and render a true verdict. *Commonwealth v. Hardcastle,* 519 Pa. 236, 254, 546 A.2d 1101, 1109 (1988). A new trial is not required every time a defendant

alleges that a prosecutor made an intemperate or improper remark. *Id.* Here, the record reflects that the prosecutor's comments were intended to emphasize that appellant had provided, in his statement to the police, three inconsistent versions of what happened and that his statement conflicted with the medical evidence. Also, the record reflects that appellant himself conceded in his statement to the police that he caused the baby's injuries and, further, that counsel focused the jury on the intent issue, which was the critical question. In addition, appellant has demonstrated no error or prejudice with regard to the prosecutor's comments or counsel's failure to make an opening statement. This argument lacks merit.

■■■■ Appellant next argues that counsel was ineffective by failing to object to the admissibility of color photographs of the victim. Photographs of a corpse are admissible into evidence where the court determines that the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Commonwealth v. Petrakovich,* 459 Pa. 511, 521, 329 A.2d 844, 849 (1974); *Commonwealth v. McCutchen,* 499 Pa. 597, 602, 454 A.2d 547, 549 (1982). In appellant's case, when the Commonwealth offered the photographs into evidence, the attorneys had a sidebar discussion followed by a discussion in the judge's chambers. Following the discussions, appellant's counsel indicated he did not object to the introduction of the photographs. The record reflects that the photographs were introduced to demonstrate specific intent to kill by use of physical force on vital parts of the body. Appellant has not even argued that the photographs were inflammatory and, therefore, has failed to demonstrate how the likelihood of inflaming the minds of the jurors outweighed the evidentiary value of the pictures. This claim is meritless.

■■■■ Appellant then argues that counsel was ineffective because he failed to investigate medical evidence or to call medical witnesses who might have been helpful, did not call other defense witnesses, or did not personally meet with

appellant. Counsel is not ineffective merely because he does not call a medical or forensic specialist to present testimony which would critically evaluate the expert testimony presented by the prosecution. *Commonwealth v. Yarris,* 519 Pa. 571, 602, 549 A.2d 513, 529. Here, appellant has failed to identify any medical specialists who would have testified to any particular facts or opinions that would have been helpful to the defense. Further, the record reflects counsel cross-examined all of the Commonwealth's expert witnesses in an attempt to establish an accidental death theory and to explore the soundness of the prosecution's theory. This claim is meritless.

Appellant's argument regarding the failure to call other defense witnesses is likewise without merit. In order to prevail on a claim that counsel was ineffective for failing to call a witness, a defendant is required to establish that: 1) the witness existed; 2) such witness was available to testify for the defense; 3) counsel knew of or should have know of the existence of the witness; 4) the witness was willing to testify for the defense; and 5) the absence of the testimony of such witness was so prejudicial as to have denied him a fair trial. *See, Commonwealth v. Horton,* 434 Pa.Super. 478, 486, 644 A.2d 181, 185 (1994). The record reflects that six witnesses appeared at the evidentiary hearing regarding this issue. Three would have testified at trial that they each saw appellant with the victim and did not see appellant abusing the victim on March 28, 1991 or before. One would have testified that appellant had mental health problems. The last two, appellant's father and mother, would have testified at the trial concerning appellant's mental health problems. Counsel testified he had not called these witnesses because he believed they would have been hostile, would have presented testimony that was not relevant to what happened on March 28, or would have presented testimony that did not support a defense. Appellant has failed to demonstrate any error or prejudice.

Finally, appellant claims that counsel could not prepare a defense because he did not meet with appellant. This claim is not supported by the record. At the evidentiary

hearing, counsel testified that he met with appellant several times prior to trial and had a firm grasp of the case. Also, counsel said that based on discovery, meetings with appellant and his own research, he was confident in his understanding of the potential defenses and was prepared to try the case. Even appellant conceded that when he met with counsel, counsel knew what was contained in the discovery materials. Appellant has demonstrated neither error nor prejudice.

Appellant's fifth contention is that counsel was ineffective for failing to present points for charge or to object to the trial court's instructions. Appellant argues alternatively that counsel should have requested a charge that voluntary intoxication can negate the specific intent required for murder of the first degree or should have requested a charge on voluntary manslaughter. Also, recognizing that the evidence was contradictory on the question of his alcoholic consumption, appellant argues that counsel failed to develop testimony regarding a defense of intoxication so as to require such an instruction.

None of the relevant law supports appellant's claims. Evidence of voluntary intoxication of a defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder. 18 Pa.C.S. § 308. Also, a defendant charged with murder is entitled to have his jury charged on voluntary manslaughter or involuntary manslaughter on request of counsel when the evidence would support such a verdict. *Commonwealth v. Carter*, 502 Pa. 433, 436, 466 A.2d 1328, 1329 (1983). Trial counsel cannot be deemed ineffective for failing to submit points for charge or to object to the trial court's instruction where the charge has been adequately, accurately and clearly presented to the jury. *Commonwealth v. Buehl*, 510 Pa. 363, 381, 508 A.2d 1167, 1176 (1986).

In appellant's case, he has failed to demonstrate that sufficient evidence of record existed to support the defense of intoxication, that defense counsel could have developed evidence of such defense, or that the trial court's instruction was defective. Also, the record reflects no evidence, and

appellant has referred to no evidence, which would support a verdict of voluntary manslaughter. Accordingly, had defense counsel requested a charge on voluntary intoxication or voluntary manslaughter at trial, both requests would have been denied. Counsel is not ineffective for failing to make futile requests. This claim has no merit.

Appellant's sixth contention is that defense counsel was ineffective during the penalty phase. He first argues that counsel did not thoroughly question the defense witness or cross-examine Commonwealth witnesses. It is the quality rather than the quantity of defense questions that is probative of the issue of ineffectiveness. Here, the record reflects that counsel was able to elicit contradictory testimony from two Commonwealth witnesses on the issue of pain, which directly related to whether torture was an aggravating factor. Further, the sentencing jury was persuaded that two mitigating factors existed, i.e., remorse and appellant's mental state. Appellant has demonstrated no error.[4]

Appellant then argues that, after the jury returned its verdict of guilt, counsel was ineffective for failing to request sequestration of the jury or an instruction to the jurors to avoid the media. The mere existence of trial publicity does not warrant a presumption of prejudice which would warrant sequestration; a defendant must show the case is the subject of unusual or prejudicial publicity. *See, Commonwealth v. Gorby, supra,* 527 Pa. at 107–08, 588 A.2d at 906 (1991). In appellant's case, the trial judge instructed the jury again after the guilty verdict not to discuss the case with anyone. Also, appellant has failed to demonstrate there was extraordinary publicity concerning the trial or the jury was unable to, or did not, follow the judge's instructions not to discuss the case with

---

4. Appellant also claims that counsel was ineffective in permitting torture to be considered as an aggravating circumstance based on the alleged late filing by the Commonwealth of its notice of torture as an aggravating circumstance. This claim is meritless since the record reflects that notice of the two aggravating circumstances, i.e., age and torture, was filed before appellant's arraignment took place.

anyone. There is no merit to this claim.[5]

Appellant also claims that counsel reversed the burden of proof with regard to the death penalty statute. The record reflects that counsel stated: "If you find that the mitigating circumstances in this case outweigh the aggravating circumstances, you do not have to vote for the death penalty you can vote life in prison." Counsel did not, as appellant claims, tell the jury that appellant had the burden of proof that mitigating circumstances outweighed aggravating circumstances. Appellant has demonstrated no error and, even assuming error existed, appellant has shown no prejudice since the record reflects that the trial court accurately instructed on this matter.

Appellant next argues that counsel was ineffective for not objecting to the Commonwealth's improper reference to God in its opening statement in the penalty phase. The record reflects the following statement by the prosecutor: "The presumption of innocence is gone. It is removed. That is as final in God as Ryan Leahy's life is. That man stands today a convicted murderer." Appellant argues this statement violates the command of *Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630 (1991). There, the prosecutor argued in support of the imposition of a penalty of death: "as the Bible says, 'and the murderer shall be put to death.'" *Id.* at 585, 599 A.2d at 643. This court held it was reversible error per se for the prosecutor to rely on the Bible or any other religious writing in support of the imposition of a penalty of death because religious law, therefore, became an additional factor for the jury's consideration which did not flow from the evidence or legitimate inferences drawn therefrom. *Id.* at 586, 599 A.2d at 644. Appellant has failed to demonstrate how the prosecutor's tangential reference to God

**5.** Appellant also argues that counsel was ineffective in his opening and closing statements in the penalty phase. The record reflects that counsel waived his right to make an opening statement and, following the close of the Commonwealth's case, counsel did not make a statement but, instead, called appellant to testify. Appellant has demonstrated no error.

constitutes an interjection of religious law for the jury's consideration. There is no merit to this claim.

■ Appellant further argues that counsel was ineffective for not objecting when the trial court refused to answer the sentencing jury's question to the court as to whether life in prison permitted parole.[6] Appellant claims that had the jury been informed that "life sentence" in Pennsylvania meant life without parole, the sentencing jury may have returned a sentencing verdict of life.

■ Appellant essentially argues that, under the authority of *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the trial court erred by failing to instruct the sentencing jury that "life sentence" means "life without parole." This court held in *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877 (1995), that *Simmons* mandates that where future dangerousness is at issue and a specific request is made by the capital defendant, it is a denial of due process to refuse to tell a jury what the phrase "life sentence" means.[7] The Supreme Court concluded that the absence of the instruction had the effect of creating a false choice between sentenc-

6. The record reflects the judge refused to answer the sentencing jury's question of whether "life in prison constituted parole," and told the jurors that was not their concern.

7. In *Simmons*, the defendant was tried for the murder of an elderly woman. During closing arguments at the penalty phase, the prosecution argued that in fixing Simmons' punishment, the jury should consider his future dangerousness. Simmons' counsel sought to rebut the prosecution's future dangerousness contention by presenting evidence that, due to Simmons' particular psychological problems, he was dangerous only to elderly women who would not be found in a prison setting. Counsel asked the court to instruct the jury that, under South Carolina law, a sentence of life imprisonment did not carry any possibility of parole. The trial court refused to grant the requested instruction and Simmons was sentenced to death.

The Supreme Court reversed, ruling that Simmons had been denied due process. The Court reasoned that the jury reasonably may have believed that petitioner could be released on parole if he were not executed and, to the extent that this misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration. *Simmons*, 512 U.S. at ——, 114 S.Ct. at 2193.

ing petitioner to death and sentencing him to a limited period of incarceration.

Appellant has demonstrated no error. In appellant's case, the record reflects that the sentencing jury was not faced with the issue of future dangerousness and *Simmons* does not apply. Further, appellant's counsel is not deemed ineffective for failing to request an instruction under *Simmons* where counsel's actions were predicated on well-established Pennsylvania law prohibiting the grant of such requests [8] or for failing to predict that the law would change three years after appellant's conviction. Appellant has demonstrated no error.

Appellant then argues that the trial court erred in allowing the sentencing jury to consider torture as an aggravating circumstance and in ruling that the evidence of torture was sufficient as a matter of law. This court stated in *Commonwealth v. Thomas,* 522 Pa. 256, 561 A.2d 699 (1989) that torture is an aggravating circumstance where the defendant "intended to inflict a considerable amount of pain and suffering on the victim which is unnecessarily heinous, atrocious or cruel, manifesting exceptional depravity." A review of the record, particularly the testimony of the expert witnesses and the coroner respecting the injuries and consequent pain, reflects no error in the trial court's decision that this claim is meritless.

Appellant's seventh contention is that counsel was ineffective during post-trial motions because he only raised penalty-phase issues, i.e., issues relating to the consideration of torture as an aggravating circumstance. Appellant argues that counsel should have raised as issues some of the matters to which counsel objected during the guilt phase [9] and during

---

**8.** The sentencing court's conclusion was in accord with long-standing precedent in Pennsylvania that expressly prohibited capital juries from hearing about Pennsylvania's life-without-parole statute. *Commonwealth v. Christy,* 540 Pa. 192, 217 n. 22, 656 A.2d 877, 889 n. 22 (1995).

**9.** Appellant fails to identify any guilt-phase issue that should have been raised in post-trial motions.

the penalty phase.[10]   Appellant fails to demonstrate that any of these matters had merit or that the failure to raise them caused appellant prejudice.

Finally, appellant argues that counsel was ineffective at the penalty phase because he did not submit evidence in mitigation.   42 Pa.C.S. § 9711(e) permits the introduction at the penalty phase of the following evidence:

(1) The defendant has no significant history of prior criminal convictions.

(2) The defendant was under the influence of extreme mental or emotional disturbance.

(3) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.

(4) The age of the defendant at the time of the crime.

(5) The defendant acted under extreme duress, although not such duress as to constitute a defense to prosecution under 18 Pa.C.S. § 309 (relating to duress), or acted under the substantial domination of another person.

(6) The victim was a participant in the defendant's homicidal conduct or consented to the homicidal acts.

(7) The defendant's participation in the homicidal act was relatively minor.

(8) Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.

Trial counsel neither pursued nor presented any evidence of mental state at the penalty phase even though some evidence may have existed.   The record reflects appellant suffered some mental problems.[11]   Yet, trial counsel did not

---

**10.**  Appellant argues that counsel should have challenged the trial court's admission, over defense objection, of evidence of prior abuse of the baby.   He also claims that counsel should have challenged the trial court's allowance, over defense objection, of questioning of appellant concerning statements given by the police and whether appellant committed the acts.

**11.**  As stated earlier in this opinion, trial counsel had been informed by a witness that appellant had mental problems.

pursue this potentially mitigating evidence of mental state for the penalty phase.[12] Nevertheless, the jury found mental state as a mitigating factor.[13] Thus, mental state appeared important to the sentencing jury which heard nothing on the issue. What is not known is whether some admissible evidence existed, for, if it existed and had the jury heard about it, the jury might have come to a different conclusion, i.e., life in prison instead of death.

We hold that where counsel is informed that his client has suffered some mental problems that may provide evidence of mitigation in the penalty phase, counsel is ineffective if he fails to pursue such evidence.[14] Of course, trial counsel is not ineffective for failing to submit evidence of mitigation where no such evidence exists. *Commonwealth v. Buehl,* 510 Pa. 363, 383–84, 508 A.2d 1167, 1177 (1986). Here, trial counsel erred by failing to pursue evidence regarding appellant's mental state. It cannot be said that such error did not

12. Counsel did not contact appellant's parents about this issue and did not otherwise pursue the matter raised by the witness referred to in the previous note. Counsel at the ineffectiveness hearing stated that he limited the scope of his questioning of appellant so as to minimize damaging questioning by the Commonwealth on cross-examination. Counsel's decision might have been different had counsel pursued evidence of appellant's mental state for, if there was admissible evidence of mental state, counsel might have concluded that the potential damage was outweighed by the potential benefit of the jury hearing such evidence.

13. The record reflects an apparent discrepancy between the mitigating circumstances pursued by appellant and those found by the jury. Appellant pursued two mitigating factors at the penalty phase: appellant's age, twenty-one at the time of the victim's death, and his remorse. During jury deliberations, the jury asked the judge whether it could use appellant's mental state as a mitigating factor and the judge said yes. Thereafter, the jury found, as mitigating circumstances, appellant's remorse after the fact and appellant's mental state and recorded the same on the verdict slip. (The jury did not state whether "mental state" was extreme mental or emotional distress, diminished capacity or duress.)

14. As discussed *supra,* trial counsel did not present mental-state evidence during the guilt phase either; however, this claim lacked merit because appellant failed to establish that any of the claimed defenses had a chance of success as a defense in the guilt phase. Thus, the ineffectiveness standard respecting prejudice was not met.

prejudice the result.[15]

Conviction of murder of the first degree affirmed; judgment of sentence vacated and remanded for a new sentencing hearing.

NIX, C.J., did not participate in the consideration or decision of this matter.

NEWMAN, J., files a concurring opinion which is joined by CAPPY, J.

NIGRO, J., concurs in the result.

CASTILLE, J., files a dissenting opinion.

NEWMAN, Justice, concurring.

I join in the majority's holding that trial counsel was ineffective for failing to investigate potentially mitigating evidence, thus, requiring a new penalty hearing, but I write separately to emphasize that this Court repeatedly has found that the failure of defense counsel to adequately prepare, particularly in a capital case, is simply an abdication of the minimum performance required. We have specifically held that a failure to investigate witnesses and/or records, that may have established a defense or mitigating circumstance, constitutes ineffective assistance of counsel.

In *Commonwealth v. Perry*, 537 Pa. 385, 644 A.2d 705 (1994), a capital case, trial counsel failed to investigate a potential eyewitness whom a Commonwealth witness had mentioned. Trial counsel also failed to interview the Commonwealth witness to attempt to find the potential eyewitness or other witnesses. The trial court had discredited this allegation because the appellant did not know the eyewitness' last

---

**15.** The court does not here address the issue of whether appellant has a due process right to psychiatric assistance during the penalty phase. In *Commonwealth v. Christy, supra,* this court held that a defendant has a due process right to state-funded psychiatric assistance during the penalty phase of a death penalty case where the assistance would be useful to rebut the prosecution's assertion of the defendant's "future dangerousness" to society. Issues presented by *Christy* are not before the court.

name or address. We held that counsel's failure to interview witnesses, including these witnesses, was ineffective, "arguably per se." *Id.* at 392, 644 A.2d at 708 (citing *Commonwealth v. Mabie,* 467 Pa. 464, 359 A.2d 369 (1976)).

In *Commonwealth v. Mabie,* a second degree murder case, trial counsel did not attempt to obtain hospital records that may have supported a self-defense claim. Trial counsel also did not try to interview eyewitnesses listed in the Commonwealth's file. Counsel explained that he did not attempt to obtain the hospital records because he had relied on the investigating police officers' description of the incident to discount the appellant's assertion that the victim had attacked him. Counsel also explained that he made no effort to question the eyewitnesses because, after hearing the testimony of one witness at the preliminary hearing, he concluded that the witnesses were so hostile that calling any one of them may have been detrimental to his client's case.

We determined that counsel's performance in *Mabie* was not constitutionally effective. Regarding the hospital records, we explained:

Since discussions with witnesses and a review of [the] records may have established a defense and the pursuit of such a possible defense was curtailed only upon the basis of information in the Commonwealth's file, counsel's decision not to investigate [the records] cannot be said to have a reasonable basis designed to effectuate his client's interest.

*Id.* at 474, 359 A.2d at 374.

Regarding the witnesses, we explained:

While hostile witnesses at trial may have presented added difficulties to appellant's case, the question here is the decision not to interview them, not the decision to refrain from calling them at trial. Accordingly, there was no danger of hostile witnesses inflaming a jury during an interview to determine what each saw and their degree of potential hostility. Rather, the value of the interview is to inform counsel of the facts of the case so that he may formulate strategy. Perhaps, after questioning these wit-

nesses, counsel may have concluded that the best strategy was not to call them due to hostility and, as a matter of strategy, that decision on counsel's part would not be subject to a claim of ineffective assistance of counsel. However, no such claim of strategy can be attached to a decision not to interview or make an attempt to interview eyewitnesses prior to trial.

*Id.* at 475, 359 A.2d at 374. *See also Commonwealth v. Jones,* 496 Pa. 448, 437 A.2d 958 (1981).

Here, the record shows that Appellant and his step-mother informed trial counsel of his mental health problems, including the fact that he had been taking medication for behavior control and had been involved in counselling at mental health institutions for substance abuse and temper problems. Counsel even testified that he advised Appellant not to take the stand because his violent temper may have emerged during cross-examination. Counsel, however, failed to perform any independent investigation of the potentially mitigating evidence relating to Appellant's mental state. Counsel explained only that he decided not to investigate Appellant's mental health history because nothing in the discovery materials seemed to warrant further inquiry.

As we stated in *Mabie,* the Sixth Amendment demands that counsel give undivided allegiance and faithful devoted service to a client. We, therefore, cannot consider counsel's failure to investigate potentially mitigating evidence, based only on his assessment of information contained in the discovery materials, as a decision designed to protect his client's interests.

As in *Perry,* we need not perform an extensive analysis to perceive the prejudice to Appellant's case. Particularly, here, where the jury did consider mental state as a mitigating factor, there is a reasonable probability that counsel's failure to investigate evidence relating to Appellant's mental state affected the outcome of his penalty hearing. The death penalty jury might have rendered a verdict of life imprisonment had counsel presented evidence of Appellant's mental state. Appellant, therefore, has established the ineffective-

ness of his defense counsel at the penalty hearing and is, thus, entitled to a new penalty hearing.

CAPPY, J., joins in this concurring opinion.

CASTILLE, Justice, dissenting.

I respectfully dissent from the majority's reversal of appellant's death sentence and order remanding for a new penalty hearing on the grounds that trial counsel was ineffective for failing to present mitigating evidence at the penalty hearing. It is well established that in order to prevail on a claim that trial counsel was ineffective, appellant must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have any reasonable basis designed to effectuate his client's interests; and (3) counsel's ineffectiveness prejudiced appellant. *Commonwealth v. Edmiston,* 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993), *citing, Commonwealth v. Pierce,* 515 Pa. 153, 158, 527 A.2d 973, 975 (1987).

Counsel is presumed to have acted in his clients's best interest; thus, *it is appellant's burden to prove otherwise. Commonwealth v. Hancharik,* 534 Pa. 435, 633 A.2d 1074 (1993); *Commonwealth v. Miller,* 494 Pa. 229, 233, 431 A.2d 233, 235 (1981). The majority concludes that trial counsel was ineffective in the present case because he failed to obtain mitigating evidence which *may* have existed. However, appellant does not even specifically allege that trial counsel was ineffective for failing to present evidence of mental state as a mitigating factor during the penalty phase of trial. In his brief, appellant merely alleges that trial counsel failed to present sufficient, proper evidence of mitigation. Although appellant lists the mitigating factors listed in the death penalty statute,[1] he does not focus on any specific mitigating factor, nor does he identify any evidence which would support any particular mitigating factor. By identifying appellant's mental state as the mitigating factor which counsel should have pursued, the majority has performed appellant's job for him.

1.  42 Pa.C.S. § 9711(e).

However, the burden is upon appellant and not upon this Court to establish ineffective assistance of counsel. *Commonwealth v. Jones,* 539 Pa. 222, 236–37, 651 A.2d 1101, 1109 (1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995).

Moreover, as the majority acknowledges, appellant's "mental state" was one of the two mitigating factors found to exist by the jury during the penalty phase.[2] The majority further notes that trial counsel was aware prior to the penalty phase that appellant had suffered from mental problems in the past. The majority concludes that, given these two factors, trial counsel's failure to pursue additional evidence of appellant's so-called mental problems constitutes ineffective assistance of counsel because of the possibility that such a search may have revealed additional evidence which may have led the jury to weigh the mitigating factor of appellant's mental state more heavily, thereby resulting in a determination that the mitigating circumstances may have outweighed the aggravating circumstances, which in turn may have resulted in a different sentence.

The speculative analysis engaged in by the majority ignores the fundamental fact that it is always appellant's burden to demonstrate at the hearing on trial counsel's ineffectiveness that the evidence in question actually existed and would have been helpful to his case. *Jones, supra; Commonwealth v.Baker,* 531 Pa. 541, 562, 614 A.2d 663, 674 (1992); *Commonwealth v. Hutchinson,* 521 Pa. 482, 486, 556 A.2d 370, 372 (1989); *Commonwealth v. Hentosh,* 520 Pa. 325, 334, 554 A.2d 20, 25 (1989); *Commonwealth v. McNeil,* 506 Pa. 607, 615–16, 487 A.2d 802, 806 (1985); *Commonwealth v. Pettus,* 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981). As the majority candidly admits, appellant failed to present any evidence at the evidentiary hearing which would establish the existence of evidence of appellant's mental state which trial counsel supposedly should have discovered prior to the penalty phase. Absent such a showing, appellant has failed to meet his burden of

---

2. The other mitigating factor found by the jury was that appellant had shown remorse for his crime.

establishing that trial counsel was ineffective for failing to present such evidence at the penalty phase, as appellant has failed to demonstrate that any such evidence exists. By holding otherwise, the majority is analyzing appellant's claim in a vacuum an is engaging in nothing more that speculation in overturning the considered verdict rendered by those twelve jurors. *McNeil, supra; Pettus, supra.* I therefore respectfully dissent and would affirm the judgment of sentence of death.

NIX, C.J., did not participate in the consideration or decision of this case.