J-S24033-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,     :     IN THE SUPERIOR COURT OF
                                         :              PENNSYLVANIA

                 Appellee          :
                                           :

         v.                           :
                                           :

FREDDY MCCUTCHEN,              :
                                           :

                Appellant       :      No. 1323 EDA 2019

Appeal from the Judgment of Sentence Entered April 8, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0701591-1971

BEFORE:     BENDER, P.J.E., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:            **FILED JUNE 22, 2020**

Freddy McCutchen (Appellant) appeals *pro se* from the April 8, 2019 judgment of sentence of 40 years to life imprisonment imposed following a resentencing hearing pursuant to ***Miller v. Alabama***, 567 U.S. 460 (2012).[1] Upon review, we conclude that the PCRA court lacked jurisdiction to vacate Appellant's original judgment of sentence, and therefore quash.

A prior panel of this Court provided the following background.

> This case has been the subject of four prior published decisions. In 1973, a jury initially found Appellant guilty of killing a six-year[-]old boy after sodomizing the victim [(Victim)]. The facts of the brutal slaying are unnecessary to our disposition and are

---

[1] In ***Miller***, the United States Supreme Court held that a "mandatory [sentence of] life without parole [(LWOP)] for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." 567 U.S. at 465 (internal quotation marks omitted).

*Retired Senior Judge assigned to the Superior Court.

set forth in our Supreme Court's 1982 decision. ***Commonwealth v. McCutchen***, 454 A.2d 547 (Pa. 1982).[2]

At the time of the crime, Appellant was fifteen.[3] His initial conviction for first-degree murder was reversed by the

---

[2] Our Supreme Court set forth the evidence as follows.

Evidence adduced at trial established that on June 7, 1971, at approximately 9:05 P.M., [Appellant], known as "Shank," wearing a yellow jacket with a round, blue emblem, was seen walking with [] six-year-old [V]ictim and calming him after [Victim's] involvement in a scuffle with another child. They walked in the general direction of the crime scene. Later, [] fifteen-year-old [Appellant], no longer wearing the yellow jacket, was seen entering a taproom where he washed his hands. At approximately 10:30 P.M. that evening, the battered body of [V]ictim was found in a dark, abandoned area behind a vacant factory within blocks of where he was seen with [Appellant]. Slacks around his ankles, undershorts pulled up around his waist, [Victim] was pronounced dead at the scene. His shirt, stained with feces and semen, was on the ground four feet away. Near [Victim's] shirt was a large black, "bush type," comb with "Shank" scratched on the handle. A yellow jacket with a round, blue emblem was found one and one-half days later not far from the scene. Stained with both blood of [V]ictim's type and semen consistent with [Appellant's] type, the jacket was identified as the one worn by [Appellant] when he was seen calming [V]ictim and walking in the general direction of the vacant factory.

The medical examiner testified to the various severe injuries to the head, producing at least three comminuted fractures of the skull, opined to have been inflicted by blows of a heavy rounded object. Also recounted was the tearing of the marginal area of the anus in four discrete areas, as a result of the anal sodomy, and the outcome of laboratory examination of material from the anal area which established the presence of semen.

454 A.2d at 548.

[3] The record is inconsistent as to whether Appellant was 15 or 16 at the time of the crime, but our Supreme Court reviewed the crime as happening when
*(Footnote Continued Next Page)*

Pennsylvania Supreme Court because he had confessed to the crime without being afforded an opportunity to speak with his mother or another interested adult. ***Commonwealth v. McCutchen***, 343 A.2d 669 (Pa. 1975). Concomitantly, [this] Court reversed his sodomy conviction for the same reason. ***Commonwealth v. McCutchen***, 369 A.2d 291 (Pa. Super. 1976).

Thereafter, the Commonwealth retried Appellant for the murder and *nolle prossed* the sodomy count. A jury again convicted Appellant of first-degree murder on May 5, 1976.  [On April 5, 1977, Appellant was sentenced to a mandatory sentence of LWOP.] This Court reversed on the basis that two color slides of [] six-year-old [V]ictim's body, which were shown to the jury, were too gruesome and inflammatory. ***Commonwealth v. McCutchen***, 417 A.2d 1260 (Pa. Super. 1979). However, the Pennsylvania Supreme Court reversed that decision and remanded to the Superior Court for consideration of additional issues not addressed.  ***McCutchen***, 454 A.2d 547. This Court then affirmed.  ***Commonwealth v. McCutchen***, 488 A.2d 1165 (Pa. Super. 1984) (unpublished memorandum). The Supreme Court denied *allocatur* on April 10, 1985.

***McCutchen***, 121 A.3d 1126 (Pa. Super. 2015) (unpublished memorandum at 2) (footnotes omitted).  Appellant subsequently filed petitions pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, and its predecessor, in 1989, 1990, 2005, 2012, 2016, and 2018.[4]

_(Footnote Continued)_ ————————————

Appellant was 15 years old, and, according to Appellant's answer at his resentencing hearing, he would have been 15 years old at the time of the murder.  ***See McCutchen***, 454 A.2d at 548; N.T., 4/8/2019, at 10-13 (discussing inconsistencies in the record regarding Appellant's date of birth, and Appellant's providing his date of birth).

[4] On April 29, 2015, Appellant filed a petition for a writ of *habeas corpus* in federal court based in part upon ***Miller***.  The District Court denied and dismissed Appellant's petition in part, holding the portion seeking relief pursuant to ***Miller*** in abeyance.  ***See McCutchen v. Wenerowicz***, 2018 WL 2250876 at *1 & n.1 (E.D.Pa. 2018) (unreported order) ("While

_(Footnote Continued Next Page)_

Of particular relevance to this appeal are the 2012, 2016, and 2018 petitions. In 2012, Appellant sought relief, *inter alia*, for his LWOP sentence based on **Miller**. This Court affirmed the PCRA court's dismissal of Appellant's **Miller** claim pursuant to **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013) (overruled), which had held that **Miller** did not apply retroactively to claims on collateral review. **See McCutchen**, 121 A.3d 1126 (unpublished memorandum). Appellant did not seek review before our Supreme Court.

On January 25, 2016, the United States Supreme Court held that **Miller**'s prohibition on LWOP sentences for juvenile offenders announced a new substantive rule that applied retroactively in cases on collateral review, overruling **Cunningham**. **Montgomery v. Louisiana**, ___ U.S. ___, 136 S.Ct. 718 (2016). Appellant did not file a PCRA petition pursuant to **Montgomery**. Following **Montgomery**, the Defender Association of Philadelphia (DAP) compiled a list of 66 individuals, including Appellant, who it believed were entitled to **Miller/Montgomery** relief. On May 25, 2016, DAP was appointed to represent Appellant and the 65 other individuals in

*(Footnote Continued)* ─────────────────

[Appellant's] **Miller** claim also appears to be untimely, this Court will, by separate order, appoint the Federal Community Defender Office for the Eastern District of Pennsylvania to represent Petitioner on this claim. This Court will hold in abeyance its decision on [Appellant's] **Miller** claim until the Federal Community Defender Office has an opportunity to respond to the timeliness issue and the merits of the claim."). There is no indication in the record or in this Court's independent research as to the status of Appellant's federal case.

connection with any *Montgomery* proceedings. Following appointment, DAP did not file a PCRA petition based on *Montgomery*.

On June 22, 2016, Appellant *pro se* filed a petition seeking relief pursuant to *Williams v. Pennsylvania*, ___ U.S. ___, 136 S.Ct. 1899 (2016) (holding "that under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case"). Specifically, Appellant averred that Pennsylvania Supreme Court Justice McDermott, who was the judge at Appellant's jury trial, should have recused himself from Appellant's appeal before that Court in 1982.

On August 15, 2016, as part of the "Juvenile Lifers Sentenced Without the Possibility of Parole Program," a "PCRA Conference Order" was entered tentatively scheduling Appellant for a resentencing hearing on October 17, 2016. Order, 8/15/2016.[5] On October 25, 2016, the Commonwealth filed an answer, purportedly in response to a PCRA petition seeking *Miller/Montgomery* relief, conceding that Appellant was entitled to such relief. However, no PCRA petitions raising a *Miller/Montgomery* claim appear in the record prior to the filing of this purported answer. In its March 15, 2017 answer to Appellant's 2016 *pro se* PCRA petition raising a

---

[5] We are unable to glean any additional information on this program from the record.

*Williams* claim, the Commonwealth stated that no petition pursuant to *Miller/Montgomery* had been filed when it filed its October 25, 2016 answer. Commonwealth's Response, 3/15/2017, at 3 (unnumbered). In Appellant's *pro se* response to the Commonwealth, Appellant raised for the first time, in cursory fashion at the conclusion of his *Williams* analysis, that his LWOP sentence was illegal pursuant to *Montgomery*. Appellant's Response, 3/29/2017, at 6.

The PCRA court appointed non-DAP counsel on Appellant's *Williams* petition, and that counsel filed a petition to withdraw and *Turner/Finley*[6] no-merit letter. The PCRA court ultimately dismissed Appellant's 2016 PCRA petition raising a *Williams* claim as untimely. On October 16, 2018, this Court affirmed the PCRA court's dismissal. *Commonwealth v. McCutchen*, 200 A.3d 567 (Pa. Super. 2018) (unpublished memorandum).

On December 7, 2018, and December 17, 2018, additional "PCRA Conference Orders" were issued, rescheduling Appellant's purported resentencing hearing. On December 18, 2018, DAP filed for the first time a PCRA petition challenging the legality of Appellant's LWOP sentence under *Montgomery*. Therein, counsel acknowledged that he had failed to file timely a petition, but argued that all parties had been operating as if Appellant had filed timely a petition following *Montgomery*, and requested

---

[6] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

that the PCRA court consider Appellant's December 18, 2018 petition *nunc pro tunc*. PCRA Petition, 12/18/2018, at 2 (unnumbered) ("[S]ince the lack of having filed a **Montgomery** claim appears to have been a mere administrative oversight, in the interest of justice, [Appellant] respectfully requests that [the PCRA court] reinstate his **Miller/Montgomery** PCRA *nunc pro tunc*, and continue its diligent efforts at permitting vacation of the mandatory life sentence, and re[]sentencing [Appellant] according to the current [juvenile LWOP resentencing] procedures."). On January 4, 2019, the PCRA court granted Appellant's request to consider his December 18, 2018 petition *nunc pro tunc*.[7]

On April 8, 2019, the PCRA court granted Appellant's December 18, 2018 PCRA petition, vacated his 1977 LWOP sentence, and held a resentencing hearing in accordance with **Commonwealth v. Batts** (**Batts II**), 163 A.3d 410 (Pa. 2017).[8] After hearing the arguments of counsel and

---

[7] For the reasons discussed at length *infra*, the court lacked jurisdiction to consider the PCRA petition.

[8] In **Batts II**, our Supreme Court held that in resentencing a juvenile defendant convicted of first-degree murder pre-**Miller**, a court may sentence the defendant to LWOP only after finding him "permanently incorrigible and that rehabilitation would be impossible[;]" otherwise, the defendant shall be sentenced to life with the possibility of parole following a minimum term-of-years sentence. 163 A.3d at 459-60. Here, the Commonwealth conceded that it could not prove Appellant was incorrigible and incapable of rehabilitation, and therefore did not seek a LWOP sentence. N.T., 4/8/2019, at 15-16. Due to the surrounding circumstances of the murder, even though Appellant was not convicted of sodomy at his second trial, the Commonwealth requested that Appellant be supervised upon release by a
*(Footnote Continued Next Page)*

- 7 -

victim impact statements from Victim's sister and father, the court sentenced Appellant as follows.

> [T]his is one of the worst cases that I have seen. The damage that you caused and the pain that you caused can't be described. And you heard from [Victim's sister] that her mother attempted to commit suicide multiple times as a result of your actions. So you had this happy family who has been destroyed. That doesn't diminish how you destroyed your own life, but it is hereby the sentence of this [c]ourt that you serve a period of not less than 40 nor more than life imprisonment.
>
> Now, I am making a condition that you undergo a sex treatment program in the prison before you are eligible for parole. So make sure you hear me and understand me. In the past, you may have refused programs and you can refuse programs again. But if you don't complete a sex offender program in prison, the Parole Board is not going to consider paroling you, nor will I when they ask me what my recommendations are.
>
> ***
>
> So, you have the time credit in, but so we understand, get that program done and then you'll be eligible for parole. Time for credit.

N.T., 4/8/2019, at 39-41.

Immediately following the court's imposition of sentence, Appellant indicated that he wanted to represent himself for purposes of appeal. Accordingly, the court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 1 (Pa. 1998). **See** N.T., 4/8/2019, at 41-51. At the

_(Footnote Continued)_ _____

sex offender unit of the Parole Board. **Id.** at 33-34. DAP conveyed Appellant's request of a sentence of 22½ to 45 years, but acknowledged that such a sentence was not legally permissible under **Batts II**. Alternatively, DAP asked the court to sentence Appellant to 35 years to life. **Id.** at 31-32. It was undisputed that Appellant had been in prison for 48 years at the time of his resentencing hearing.

conclusion of the hearing, the court permitted DAP to withdraw and granted Appellant's request to proceed *pro se*. **Id.** at 51.

On April 15, 2019, Appellant filed a motion for reconsideration of sentence based on, *inter alia*, (1) the Commonwealth's reading aloud a portion of Appellant's statement that had previously been suppressed by **McCutchen**, 343 A.2d 669; (2) the Commonwealth's mentioning Appellant's sodomy charge even though it had been *nolle prossed*; (3) the court's imposing a condition requiring that Appellant complete sex offender treatment before being eligible for parole; and (4) an alleged due process violation because the court imposed a new minimum sentence of 40 years where Appellant had 48 years' credit, thereby causing him to lose the opportunity to seek parole for the last eight years. The court denied Appellant's post-sentence motion on April 30, 2019.

Appellant filed a notice of appeal on April 30, 2019.[9] Both Appellant and the resentencing court have complied with the mandates of Pa.R.A.P.

---

[9] The notice of appeal was hand-dated April 27, 2019, and received April 30, 2019. Thus, it was filed before the court ruled on Appellant's post-sentence motion. **See Commonwealth v. DiClaudio**, 210 A.3d 1070, 1074 (Pa. Super. 2019) ("[T]he prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing."). As a general rule, this Court has jurisdiction only over final orders. When a post-sentence motion is filed timely, the judgment of sentence does not become final until the trial court disposes of the motion or it is denied by operation of law. Pa.R.Crim.P. 720(A)(2). "No direct appeal may be taken by a defendant while his or her post-sentence motion is pending." Pa.R.Crim.P. 720 *comment*. When an appellant files a notice of appeal before the court has ruled on his post-sentence motions, the
*(Footnote Continued Next Page)*

J-S24033-20

1925. On appeal, Appellant raises the following questions for our review, which we restate verbatim.

1. Whether where the Commonwealth introduced a confession which had been suppressed over 44 years ago created prosecutorial misconduct and violated the Appellants constitutional right to remain silent and as such impermissibly contributed to the sentence of 40 years to life?

2. Whether where the Commonwealth injected into the sentencing hearing a sodomy charge and conviction that had been reversed and *nolle prosequi* and the indictment squashed for lack of prosecution over 42 years ago impermissibly contributed to the sentence of 40 years to life and as such created prosecutorial misconduct?

3. Whether where the hearing and sentencing court ordered that the Appellant must enter a sex offender program and must complete it before he can be paroled created two impermissible presumptions (1) where there is no conviction for any sexual conduct and (2) where neither at the first trial held October 1972 sentence imposed on 10-3-73 nor at a second trial held April-May 1976 sentence imposed on April 5th 1977 did either court order any such program nor conditions nor any sex offender registration once out of prison causes the sentencing court order of April 8th 2019 to be an abuse of discretion, judicial overreaching and retaliation, and amounts to convicting the Appellant of a crime he is not charged with?

4. Whether where the sentencing court imposed a 40 year minimum is contrary to the State Supreme Court

(Footnote Continued) ———————————

judgment of sentence is not yet final, and any purported appeal therefrom is premature and interlocutory. In those circumstances, the proper remedy is to quash the appeal, relinquish jurisdiction, and remand for the trial court to consider the post-sentence motions *nunc pro tunc*. **See Commonwealth v. Borrero**, 692 A.2d 158, 160 (Pa. Super. 1997) (holding appeal premature while post-sentence motion was still pending before the lower court). In the instant case, although Appellant's notice of appeal was filed prematurely, our jurisdiction has been perfected because the court subsequently entered an order denying Appellant's post-sentence motion.

- 10 -

determination at **Commonwealth v. Batts** No. 79 MAP (2009) decided 3-26-19[10] where the Court ordered that juveniles convicted prior to June 25, 2012 cannot be subjected to the high mandatory minimum of § 1102.1 upon resentencing?

5. Whether where the sentencing court imposed a sentence of 40 years to life denied the Appellant substantive due process and created cruel and unusual punishment violative of the United States Constitutions 8th and 14th Amendments where (1) the minimum of 40 years expired on June 8th 2011 8 years before the sentence was imposed, and as such denied the Appellant the right to had submitted an application for a parole from 2011 to 2018 and (2) where the Appellant was not allowed to had challenged such sentence on appeal following both trials held in 1972 and 1976 and as such causes such sentence to be invalid?

Appellant's Brief at 5-6 (capitalization altered).

Before we reach the merits of Appellant's claims on appeal, we must first determine whether Appellant's **Montgomery** claim was properly presented. "Appellate jurisdiction cannot be conferred by mere agreement or silence of the parties where it is otherwise nonexistent. We may accordingly raise this issue *sua sponte,* even though neither of the parties have done so." **Commonwealth v. Borrero**, 692 A.2d 158, 159 (Pa. Super. 1997) (citations omitted). **See also Montgomery**, ___ U.S. ___, 136 S.Ct. at 732 ("In adjudicating claims under its collateral review procedures a State may not deny a controlling right asserted under the Constitution, assuming the claim is properly presented in the case."). Specifically at issue is whether the PCRA court had jurisdiction to entertain

_____

[10] **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013) (**Batts I**).

Appellant's 2018 PCRA petition, because if it did not, the court was likewise without jurisdiction to vacate Appellant's LWOP sentence, rendering the proceedings after it and any appeal from the 2019 sentence nullities.

> The PCRA provides that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1). A PCRA petition may be filed beyond the one-year time period only if the convicted defendant pleads and proves one of the following three exceptions:
>
>> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>>
>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>>
>> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
>
> *Id.* At the time of all events relevant to this PCRA petition, [subs]ection 9545(b)(2) required that a PCRA petition invoking an exception "be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2) (in effect January 16, 1996 to December 23, 2018).[3] The PCRA's time limit is mandatory and jurisdictional, and a court may not ignore it and reach the merits of the PCRA petition, even where the convicted defendant claims that his sentence is unconstitutional and illegal.
>
> ───────
> [3] In 2018, [subs]ection 9545(b)(2) was amended to provide that a PCRA petition invoking an exception "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2); Act of October 24, 2018, P.L. 894, No. 146, § 2. The Act

amending [subs]ection 9545(b)(2) provided that the one-year period applies only to timeliness exception claims arising on or after December 24, 2017. Act of October 24, 2018, P.L. 894, No. 146, §§ 3, 4. The events [giving rise to Cobbs's] claims timeliness exceptions are the 2012 **Miller** decision, the 2016 **Montgomery** [] decision and [Cobbs's] September 2017 Allegheny County case resentencing. Because all of these occurred prior to December 2017, the 60-day rather than the one-year period applies here.[11]

**Commonwealth v. Cobbs**, ___ A.3d ___, 2020 WL 880345 at *2-3 (Pa. Super. 2020) (some citations omitted).

"For purposes of [the PCRA], a judgment [of sentence] becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). Here, Appellant's sentence became final in 1985 after our Supreme Court denied *allocatur* and Appellant declined to seek review with the United States Supreme Court. As such, Appellant's 2018 petition is facially untimely and he was required to plead and prove an exception to the timeliness requirements.

Appellant did not plead any timeliness exceptions in his 2018 petition.[12] Instead, counsel requested that the PCRA court consider the

---

[11] Insofar as Appellant also bases his timeliness exception on the **Montgomery** decision, the 60-day period similarly applies here.

[12] Even if Appellant had attempted to plead and prove any of the exceptions, it would have been fruitless. The only potentially applicable exception would

*(Footnote Continued Next Page)*

J-S24033-20

petition *nunc pro tunc* based on a "mere administrative oversight" resulting in Appellant's failure to file timely a PCRA petition pursuant to ***Miller/Montgomery***, and because all parties had been proceeding as if Appellant had timely filed a PCRA petition following ***Montgomery***. ***See*** PCRA Petition, 12/18/2018, at 2 (unnumbered). While counsel attempted to take the blame for failing to file timely a PCRA petition, it is well-settled that allegations of the ineffective assistance of counsel will not overcome the

*(Footnote Continued)* ————————

be the new-retroactive-right exception based upon ***Montgomery***. The Supreme Court decided ***Montgomery*** on January 25, 2016. As such, PCRA petitions that would otherwise be untimely had to be filed by March 25, 2016, within 60 days of the issuance of ***Montgomery***, to invoke the new-retroactive-right timeliness exception. Appellant's 2018 petition clearly does not fall within that time frame, and Appellant did not file any other petition pursuant to ***Montgomery*** during that time frame.

Nor can the 2018 petition be considered an extension of Appellant's 2012 petition invoking ***Miller***. This Court affirmed the dismissal of Appellant's 2012 petition in 2015. ***See McCutchen***, 121 A.3d 1126 (unpublished memorandum). Thus, Appellant's 2012 petition was final at the time ***Montgomery*** was issued.

> Once a PCRA petition has been decided and the ruling on it has become final, there is nothing for a subsequent petition or pleading to "extend." Far from continuing into perpetuity, the [PCRA] court's jurisdiction over a matter generally ends once an appeal is taken from a final order or, if no appeal is taken, thirty days elapse after the final order.

***Commonwealth v. Robinson***, 837 A.2d 1157, 1162 (Pa. 2003) ("Since the jurisdiction of the court system over the prior PCRA petition had expired, appellee's subsequent petitions were entirely new collateral actions and, as such, they were subject to the time and serial petition restrictions of [subs]ection 9545(b) of the PCRA.").

- 14 -

PCRA's jurisdictional timeliness requirements,[13] and "the nature of the constitutional violations alleged has no effect on the application of the PCRA time bar. Rather, the only cognizable exceptions are set forth at [subs]ection 9545(b)(1)." *Commonwealth v. Edmiston*, 65 A.3d 339, 349 (Pa. 2013) (citing *Commonwealth v. Wharton*, 886 A.2d 1120, 1127 (Pa. 2005)).

> [Our Supreme] Court has repeatedly stated that the timeliness requirements are jurisdictional in nature and, accordingly, a PCRA court cannot hear untimely PCRA petitions. In addition, we have noted that [t]he PCRA confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act. We have also recognized that the PCRA's time restriction is constitutionally valid.

*Commonwealth v. Robinson*, 837 A.2d 1157, 1161 (Pa. 2003) (citations and quotation marks omitted).

Here, Appellant's petition was patently untimely and he failed to plead or prove any of the statutory timeliness exceptions. As a result, the PCRA court lacked jurisdiction to consider Appellant's 2018 PCRA petition. *See Commonwealth v. Valentine*, 928 A.2d 346, 349 (Pa. Super. 2007) (citations omitted) ("The PCRA court lacked jurisdiction *ab initio* to grant PCRA relief, because [Valentine] filed his PCRA petition more than one year after his judgment of sentence became final and failed to plead or prove a

---

[13] Additionally, counsel did not seek appointment until after the 60-day timeframe for filing a petition invoking *Montgomery* as a timeliness exception had elapsed.

statutory timeliness exception. Accordingly, we are likewise precluded from addressing the merits of Appellant's claim and quash this appeal.").

We are cognizant that Appellant is serving a sentence that would have been vacated as unconstitutional if he had filed his petition within 60 days of the issuance of **Montgomery**, because the lower court would have had jurisdiction to grant him relief. At the same time, we note that

> any formulation of a time limitation curtailing collateral judicial review must accept that some legitimate claims may possibly escape review. Nevertheless, a time bar applicable to post-conviction review is a rational, and perhaps necessary, legislative response to serial challenges raised by prisoners that undermine finality and tax government resources, and to effectively implement a limitation, exceptions by their nature must contain effective boundaries to prevent them from undermining the general rule.

**Commonwealth v. Bennett**, 930 A.2d 1264, 1279 (Pa. 2007) (Saylor, J., dissenting) (footnote omitted). Our Supreme Court has created clear boundaries around the timeliness of PCRA petitions, and we cannot create a non-statutory exception to allow Appellant the benefit of **Montgomery**.

Accordingly, we conclude that the PCRA court lacked jurisdiction to grant Appellant's request to review his PCRA petition *nunc pro tunc* or to grant PCRA relief. Consequently, Appellant's 2019 sentence and appeal therefrom are legal nullities, and his 1977 sentence remains in effect.

Appeal quashed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/20