J-S29041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                           :              PENNSYLVANIA
                                           :
            v.                                  :
                                           :
                                         :
JOSEPH MICHAEL THOMAS, JR.      :
                                           :
           Appellant                  :     No. 44 WDA 2025

Appeal from the Judgment of Sentence Entered December 13, 2024
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001396-2021

BEFORE:  NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: October 22, 2025**

Appellant, Joseph Michael Thomas, Jr., appeals from the judgment of sentence of life imprisonment, without the possibility of parole, imposed after he was convicted by a jury of first-degree murder, 18 Pa.C.S. § 2502(a).  On appeal, Appellant challenges the admission of certain photographs of the victim, as well as the sufficiency and weight of the evidence to sustain his conviction.  After careful review, we affirm.

Appellant does not dispute that the following facts were established at his four-day jury trial in December of 2024.  In November of 2020, Appellant was involved in what he terms as an "illicit sexual affair" with the victim in this case, Meghan Masi.  Appellant's Brief at 6.  On November 20, 2020, Ms. Masi picked up Appellant at his residence in Uniontown, Pennsylvania.  The two purchased food at Burger King drive-through, went to a convenience store, and then proceeded to Ms. Masi's residence.  Once there, Appellant

murdered Ms. Masi by firing two bullets from a nine-millimeter gun through a pillow and into her head. After killing Ms. Masi, Appellant took her cell phone and drove her vehicle to a location close to his residence, where he left the vehicle. The Commonwealth also presented DNA evidence linking Appellant to the vehicle, and also to items found inside Ms. Masi's home, including the pillow through which the bullets were fired into her head. The Commonwealth also proffered eyewitness testimony placing Appellant with Ms. Masi in her vehicle on the night of the murder.

Ultimately, Appellant was arrested on November 23, 2020, and charged with various offenses, including first-degree murder. He proceeded to a jury trial in January of 2024, which resulted in a mistrial. He was tried for a second time in December of 2024. Prior to Appellant's second trial, the Commonwealth withdrew all charges except for first-degree murder. After a four-day trial, the jury convicted Appellant of that offense. On December 13, 2024, he was sentenced to the mandatory term of life imprisonment, without the possibility of parole. Defense counsel did not file any post-sentence motions.[1]

---

[1] We note that Appellant filed a *pro se* post-sentence motion on December 20, 2024. On December 30, 2024, the court issued an order properly referring the motion to counsel. ***See Commonwealth v. Ruiz***, 131 A.3d 54, 56 n.4 (Pa. Super. 2007) (stating that a *pro se* post-sentence motion, filed by a represented defendant, is a legal nullity with no legal effect) (citing ***Commonwealth v. Ellis***, 626 A.2d 1137, 1139 (Pa. 1993) (holding that "there is no constitutional right to hybrid representation either at trial or on appeal")).

On January 10, 2025, Appellant filed a timely notice of appeal. He and the court thereafter complied with Pa.R.A.P. 1925. Herein, Appellant states four issues for our review:

1. Did the trial court commit an error of law and/or abuse its discretion by way of admitting a certain exhibit marked as the Commonwealth's Exhibit "XX," in the nature of a photograph depicting the deceased victim's corpse laying [*sic*] in a pool of blood and wearing a bloody sweatshirt, as the said Exhibit's prejudicial and inflammatory effect on the jury outweighed its probative value?

2. Did the trial court commit an error of law and/or abuse its discretion by way of admitting a certain exhibit marked as the Commonwealth's Exhibit "XXII," in the nature of a photograph taken at the autopsy of the deceased victim, and depicting the victim's corpse as well as a close view of entry and exit wounds thereon, as the said Exhibit's prejudicial and inflammatory effect on the jury outweighed its probative value?

3. Did the Commonwealth fail to present sufficient evidence to prove the elements of the offense of [c]riminal [h]omicide beyond a reasonable doubt?

4. Was the jury's verdict against the weight of the evidence?

Appellant's Brief at 4-5 (unnumbered).

At the outset, we note that counsel for Appellant has not divided the Argument section of Appellant's brief "into as many parts as there are questions to be argued[,]" or included "at the head of each part -- in distinctive type or in type distinctively displayed -- the particular point treated therein," as required by Pennsylvania Rule of Appellate Procedure 2119(a). Instead, counsel presents all of Appellant's four issues under the heading "Argument for Appellant," with no separation between his claims. We chastise counsel

for not adhering to the Rules of Appellate Procedure.[2]  Nevertheless, we will not deem Appellant's issues waived on this basis, as counsel's error has not meaningfully impacted our review of Appellant's claims.

However, Appellant's first issue has been waived for a different reason. Appellant argues that the trial court abused its discretion by admitting a "photograph marked as the Commonwealth's Exhibit 'XX,'" which "depicted the deceased victim's corpse laying [*sic*] in a pool of blood and wearing a bloody sweatshirt."  Appellant's Brief at 13 (unnumbered; citation to the record omitted).  According to Appellant, the court precluded another photograph that was "nearly identical" to Exhibit XX on the basis that its prejudicial effect outweighed its probative value, yet admitted Exhibit XX, "stating that 'it would provide probative value, which outweighs its prejudicial effect[,] in showing the crime scene, showing the condition of the deceased's body and showing the severity of the injury to her.'" ***Id.*** at 14 (unnumbered; citing N.T. Trial, 12/2/24, at 11).  Appellant insists that "there is no discernible difference between the photographs which were marked and admitted as the Commonwealth's Exhibits 'XX' and 'XXI' respectively…." ***Id.***  Thus, he concludes that "the trial court both committed an error of law and/or abused its discretion by way of admitting the Commonwealth's Exhibit number 'XX,' as its prejudicial and inflammatory effect clearly outweighed its probative and essential evidentiary value." ***Id.*** at 14-15 (unnumbered).

---

[2] We also note our displeasure with counsel's failure to paginate his appellate brief.

Appellant did not preserve this objection to Exhibit XX at trial. There, when the court ruled that Exhibit XX was admissible, but that Exhibit XXI was precluded as overly prejudicial, Appellant lodged no objection at all, let alone any **specific** objection on the basis that Exhibits XXI and XX were virtually identical, so they must both be deemed prejudicial. **See** N.T. Trial, 12/2/24, at 11-12. "It is well[-]settled in Pennsylvania that a party must make a timely and specific objection at trial in order to preserve an issue for appellate review." **Commonwealth v. Spone**, 305 A.3d 602, 612 (Pa. Super. 2023) (citing, *inter alia*, Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.")). **See also** Pa.R.E. 103(a)(1) (stating that a party may claim error in a ruling to admit evidence only if the party, on the record, makes a timely objection and "states the specific ground, unless it was apparent from the context"). "Failure to do so results in waiver of that issue on appeal." **Id.** (citing Rule 302(a)).

Moreover, Appellant also did not specify this claim in his Rule 1925(b) statement. Therein, he stated:

> The trial court committed an error of law and/or abused its discretion by way of admitting a certain exhibit marked as the Commonwealth's Exhibit "XX," in the nature of a photograph depicting the deceased victim's corpse laying in a pool of blood and wearing a bloody sweatshirt, as the said Exhibit's prejudicial and inflammatory effect on the jury outweighed its probative value[.]

Rule 1925(b) Statement, 3/17/25, at 1 ¶ 1 (single page). Clearly, Appellant did not state that the court erred in admitting Exhibit XX because it was nearly identical to Exhibit XXI, which the court had precluded. Therefore, the court

- 5 -

did not address this argument in its Rule 1925(a) opinion. Accordingly, Appellant's first issue is waived on this basis, as well. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Pa.R.A.P 1925(b) Order, 1/22/25, at 1 ("Any issue not properly included in the Statement timely filed and served as provided for in this Rule shall be deemed waived.") (unnumbered page); *see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (citations omitted; some brackets added).

In any event, even if not waived, we would find no merit to Appellant's argument that the court erred by admitting Exhibit XX. Preliminarily, we note that,

> [t]he standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted).

- 6 -

Here, we have reviewed the at-issue photograph and agree with the Commonwealth that it shows "the victim lying on the floor in her pajamas, surrounded by what appear[s] to be blood[.]" Commonwealth's Brief at 7. The photograph shows that the victim's eyes are open, but it is a full shot of the victim's body and, therefore, is not a close view of the victim's face. Additionally, although "[t]he photograph was originally taken in color[,]" it was "presented to the jury in black and white." *Id.*

In ruling that the photograph was admissible, the trial court stated:

> THE COURT: Being that this is a homicide trial and [the] very nature of it is sometimes gruesome, sometimes heinous, and sometimes inflammatory, this [c]ourt believes that Commonwealth's Exhibit [XX] would provide probative value, which outweigh[s] it[s] prejudicial affect in showing the crime scene, showing the condition of the deceased's body[,] and showing the severity of the injury to her.

N.T. Trial, 12/2/24, at 11.

Contrary to Appellant's claim that Exhibit XX was virtually identical to Exhibit XXI, the court explained that Exhibit XXI showed the victim

> lying with what appears to be a medical apparatus on her, something for cardiac or pulse or something of that nature. She appears to be laying [*sic*] in a pool of her own blood with blood on her sweatshirt. It appears that you can see that she is deceased with her eyes being open.

*Id.* The court specifically stated that unlike in Exhibit XXI, in Exhibit XX, it was "not as easy to see" that the victim was lying in a pool of blood. *Id.* Additionally, after stating its ruling to admit Exhibit XX, the court offered the following rationale for precluding Exhibit XXI:

> THE COURT: … [T]his photograph, [Exhibit XXI,] again shows some sort of vital sign apparatus on her and it shows her clearly deceased with her eyes fixed and open. It is easily discernible that she is lying in a pool of her own blood. Again, it is -- this picture the [c]ourt finds is more prejudicial than [Exhibit XX] and we will exclude [Exhibit XXI] finding that it's probative value is not outweighed by the prejudicial [e]ffect, even though it is in black and white, it is easily discernible that this victim is dead, covered in blood[,] and laying [*sic*] in her own blood.

*Id.* at 11-12.

Clearly, the court concluded that Exhibit XXI more vividly showed that the victim was lying in a pool of blood, her eyes were open, and she had a medical apparatus on her body, which the court felt made it more inflammatory than Exhibit XX. Appellant offers no discussion of these distinguishing factors cited by the court, instead only baldly claiming that Exhibits XXI and XX were 'nearly identical.' Appellant's Brief at 14 (unnumbered). However, the court obviously did not believe this to be true, and it is Appellant's burden to prove that that decision was an abuse of discretion. We would conclude that he has not met this burden.

Moreover, aside from claiming that Exhibit XX should have been deemed prejudicial because Exhibit XXI was found to be, Appellant does not develop any meaningful discussion of why Exhibit XX was prejudicial and inflammatory in and of itself. As the court recognized at trial, and as the Commonwealth emphasizes herein,

> [a] criminal homicide trial is, by its very nature, unpleasant, and the photographic images of the injuries inflicted are merely consonant with the brutality of the subject of inquiry. To permit the disturbing nature of the images of the victim to rule the question of admissibility would result in exclusion of all

photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor. There is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt.

Commonwealth's Brief at 8 (quoting *Commonwealth v. McCutchen*, 454 A.2d 547, 549 (Pa. 1982)).

Here, the court concluded that Exhibit XX was probative in showing the crime scene, the state of the victim's body, and the severity of her injuries. It determined that the photograph was not so inflammatory that its prejudicial impact outweighed its probative value. Having reviewed the photograph, we would discern no abuse of discretion in the court's decision, even if Appellant had preserved this claim for our review.

Next, Appellant challenges the court's admission of Commonwealth's Exhibit XXII. This photograph "was taken at the autopsy of the deceased victim, and depicted … a close view of [the] entry and exit wounds" on the victim's head. Appellant's Brief at 15. Appellant claims that this photograph "contains content which is substantially similar" to Exhibit XXI that was precluded as overly prejudicial, "insofar as it also depicts the corpse of the … victim covered in her own blood." *Id.* He also contends that the photograph shows "a close and graphic view of the exit and entry wounds sustained by the alleged victim." *Id.* Appellant maintains that all these facts demonstrate that the photograph was inflammatory and unduly prejudicial, and that the court abused its discretion by not precluding it.

We disagree. We have again reviewed the at-issue photograph and do not find that it depicts the victim 'covered in blood.' The photograph is in black and white, and is a close-up view of the victim's head, which has been cleaned of all blood, except for the bullet wounds. Therefore, the victim is not 'covered in blood,' as Appellant claims.

Moreover, we see no other way in which the photograph has any significant similarities to Exhibit XXI, aside from showing the deceased victim. We also do not consider the photograph inflammatory to the extent that its prejudicial impact would outweigh its probative value. As the court explained when ruling that it was admissible at trial, this photograph of the victim's autopsy shows the "measurements of [the] entrance and exit wounds, location of the entrance and exit wound[s,] and provides more … probative value than prejudicial [e]ffect, in that the jurors would need to see this to understand the severity of the injuries, location of the injuries, as well as the victim's body showing the … locations of the exit and entrance wounds." N.T. Trial, 12/2/24, at 13. The court also noted that in the photograph, "the victim's eyes are closed and … [she] could appear to be sleeping…." *Id.* Thus, it determined that the photograph was admissible. We discern no abuse of discretion. Therefore, no relief is due on Appellant's second issue.

Next, Appellant challenges the sufficiency of the evidence to sustain his conviction for first-degree murder. We begin by observing that,

> [w]hether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*,

- 10 -

and our scope of review is plenary. In conducting our inquiry, we examine[,]

> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021) (cleaned up).

Instantly, Appellant acknowledges that the Commonwealth presented the following physical and eyewitness evidence to prove his guilt at trial:

> Throughout the trial of the case at bar, the Commonwealth presented evidence that … Appellant's DNA was present on the steering wheel of the alleged victim's Toyota RAV 4 vehicle, and on several items which were located within the … victim's residence. More specifically, [Appellant's] DNA was found to be on both the left and the right side of a pillowcase located within Ms. Masi's bedroom, which also contained blood stains from Ms. Masi, and fibers from which were recovered from Ms. Masi's head during the autopsy examination. The evidence presented at trial is also indicative that [Appellant's] DNA was found within the inside of a cap to a Dr. Pepper bottle, and from the inside of a straw inserted into a beverage cup from a Wendy's fast[-]food restaurant, both of which were located within Ms. Masi's residence.

> In addition, the Commonwealth presented evidence at trial that a fingerprint from [Appellant's] left ring finger was recovered from

- 11 -

the exterior of the bedroom door within Ms. Masi's residence. The Commonwealth also presented evidence at trial that [Appellant] and Ms. Masi were in substantial contact on the night of November 20, 2020. Specifically, the Commonwealth presented evidence that Ms. Masi and [Appellant] had engaged in a telephone call of approximately six (6) minutes in duration; and that they had exchanged numerous text messages, the majority of which were from Ms. Masi to [Appellant]. Additionally, the Commonwealth produced evidence at trial that Ms. Masi's 2020 Toyota RAV 4 vehicle was recovered, along with her cellular telephone, on Upper Oliver 3 Road at Bute Road in North Union Township in Fayette County[,] Pennsylvania, which is in close proximity to [Appellant's] residence.

Further, the Commonwealth presented evidence in the trial of the instant case pertaining to the identification of [Appellant] by eyewitnesses as being a passenger in Ms. Masi's vehicle on the night of November 20, 2020. First, the Commonwealth presented the testimony of Bryce Burke, who testified that he was employed by Burger King and working a shift at the Burger King located on Route 119 in Dunbar, Fayette County[,] Pennsylvania[,] on the night of November 20, 2020. Mr. Burke testified that on that night, he brought a food order to Ms. Masi's vehicle, and observed that Ms. Masi had a male passenger, whom he later identified as [Appellant] during a photo lineup conducted by the Pennsylvania State Police. The Commonwealth also presented testimony from Sara Matthews, Ms. Masi's step[-]sister, who testified that Ms. Masi pulled into her driveway on the night of November 20, 2020, at which time [Appellant] was in the passenger seat of her vehicle. Finally, Trooper Tanya Wroble of the Pennsylvania State Police testified that she obtained the video surveillance from the relevant Burger King restaurant on the night of November 20, 2020, and identified a vehicle matching the description of Ms. Masi's vehicle in the drive[-]thru lane. The aforesaid testimony was also corroborated by testimony presented by the manager of the relevant Burger King restaurant as to the items purchased by Ms. Masi, which were consistent with wrappers, cups and the remnants of food observed and recovered by investigators at Ms. Masi's residence.

Appellant's Brief at 19-20 (unnumbered; citations to the record omitted).

Appellant contends that this evidence was insufficient because it was "wholly circumstantial" and "[t]he Commonwealth failed to present any direct evidence of [Appellant's] guilt[,]" such as "a murder weapon, … eyewitness testimony of … [Appellant's] committing the subject offense, or [eyewitness testimony] placing [Appellant] at the scene of the crime at the time it was committed." **Id.** at 21 (unnumbered). He also stresses that the defense presented the testimony of his brother, Christopher Thomas, who stated "that [Appellant] did not leave his residence on the night in question." **Id.** Appellant notes that Mr. Thomas's testimony was "corroborated by the testimony at trial that … operable surveillance camera … footage of the front door to [Appellant's] residence on the night in question … did not capture [Appellant] leaving his residence on the night of November 20, 2020." **Id.**

Appellant's argument is wholly unconvincing. First of all, we disagree with Appellant that the Commonwealth failed to present any 'direct evidence' of his guilt. He acknowledges that the Commonwealth proffered ample evidence that his DNA was recovered from various items at the victim's residence, including on the pillow through which the bullets were fired into her head, and from the steering wheel of her vehicle, which was parked in close proximity to Appellant's residence after the murder. This Court has considered DNA evidence to be 'direct evidence' of a perpetrator's identity. **See Commonwealth v. Conway**, 14 A.3d 101, 110 (Pa. Super. 2011) (characterizing DNA evidence as constituting "direct evidence" of the identity of an assailant).

In any event, it is well-settled that "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence." *Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa. Super. 2013) (citation omitted). Here, the Commonwealth had testimony from multiple witnesses who saw Appellant with the victim shortly before her murder. That testimony was corroborated by numerous text messages between Appellant and the victim that night. This evidence, combined with the DNA evidence and the location of the victim's vehicle in close proximity to Appellant's residence after her death, was sufficient for the jury to conclude, beyond a reasonable doubt, that Appellant murdered the victim. Moreover, the jury was free to disbelieve Appellant's brother's testimony that Appellant was home on the night of the murder, and disregard surveillance footage showing *only* the front door of Appellant's residence. *See Rojas-Rolon*, 256 A.3d at 436 ("When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence."). Thus, Appellant's challenge to the sufficiency of the evidence is meritless.

Finally, Appellant contends that the jury's verdict was contrary to the weight of the evidence. However, Appellant does not discuss this issue at all, stating only that "the jury's verdict was against the weight of the evidence[,]" without any further explanation. We will not develop an argument for Appellant; thus, his weight claim is waived. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that

have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. … This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."). We further note that Appellant also waived his claim by failing to raise it in a counseled, post-sentence motion. **See** Pa.R.Crim.P. 607(A) (stating that a claim that the verdict was against weight of evidence must be raised before the trial court orally or in a written motion prior to sentencing, or in a post-sentence motion); **Commonwealth v. Griffin**, 65 A.3d 932, 938 (Pa. Super. 2013) (finding a weight-of-the-evidence claim waived where the appellant failed to raise it in a pre-sentence motion, did not address the issue orally prior to sentencing, and did not raise it in a post-sentence motion). Consequently, Appellant's final issue is waived.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/22/2025