J-S05013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONIO D. ARCHER | : | |
| | : | |
| Appellant | : | No. 1456 WDA 2022 |

Appeal from the PCRA Order Entered November 16, 2022
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0002396-2018

BEFORE: PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.: **FILED: April 4, 2024**

Antonio D. Archer appeals from the order entered in the Fayette County Court of Common Pleas on November 16, 2022, denying his first, timely, Post-Conviction Relief Act ("PCRA") petition, 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

A detailed recitation of the underlying facts which support the charges is unnecessary given our disposition. After a trial held July 8 through July 10, 2019, the jury convicted Archer of rape of a child, involuntary deviate sexual intercourse with a child, aggravated indecent assault of a child, indecent assault of a person less than 13 years of age, endangering the welfare of

children, corruption of minors, and sexual assault.[1] Archer was sentenced on July 18, 2019, to a term of incarceration of a minimum of 17 to a maximum of 40 years. Archer appealed, and this Court affirmed his judgment of sentence on March 5, 2021. The Supreme Court of Pennsylvania denied allowance of appeal on September 21, 2021.

Archer filed a *pro se* PCRA petition on May 3, 2021. Appointed counsel then filed two amended PCRA petitions on June 8, 2022, and October 24, 2022. The PCRA court held a hearing on the amended petitions on October 25, 2022.

On November 16, 2022, the court denied Archer's PCRA petition, and Archer filed the instant appeal.[2]

Archer raises four issues:

[1.] Whether trial counsel was ineffective for failing to file any type of pre-trial motions?

[2.] Whether trial counsel was ineffective for failing to spend sufficient time preparing for trial including, but not limited to, spending sufficient time with the defendant to discuss the case and preparing for trial, interviewing witnesses and reviewing and/or viewing the evidence in which the Commonwealth planned to use against the defendant at trial?

[3.] Whether trial counsel was ineffective for failing to object to admission of tender years hearsay testimony as no *in camera*

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 3125(b), 3126(a)(7), 4304(a)(1), 6301(a)(1)(ii), and 3124.1, respectively.

[2] Archer timely complied with the trial court's order of December 16, 2022, to file a 1925(b) statement of errors complained of on appeal. He filed his statement on December 28, 2022. **See** Pa.R.A.P. 1925(b).

hearing took place to determine if the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability in accordance with 42 Pa. C. S. A. § 5985.1 (a)(1)(i)?

[4.] Whether trial counsel was ineffective for failing to file a request for bill of particulars to ascertain the specific date or dates of the alleged crime prior to trial which would have precluded the amendment of the information after the Commonwealth's case in chief and for not raising a proper objection to the amendment at the time it was made[?]

Appellant's Brief at 3.

We note with extreme displeasure the Commonwealth's failure to file an appellee's brief. "An appellee is required to file a brief that at minimum must contain 'a summary of argument and the complete argument for appellee.'" *Commonwealth v. Pappas*, 845 A.2d 829, 835 (Pa. Super. 2004) (quoting Pa.R.A.P. 2112). In *Pappas*, the panel referred to the Commonwealth's failure to file a proper appellee's brief as "unacceptable." *Id.* We echo that opinion and remind the Commonwealth of its obligation to file an appellee's brief in future appeals. In light of the serious nature of the charges in this case, regarding acts of sexual violence against a child, the Commonwealth should have prioritized its responsibility to file an appellee's brief.

Our standard and scope of review is well-settled:

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions.

> Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Selenski*, 228 A.3d 8, 15 (Pa. Super. 2020) (citations omitted).

Counsel is presumed to be effective and a petitioner claiming ineffective assistance of counsel bears the burden of proving otherwise. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). The petitioner must show, by a preponderance of the evidence, that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) prejudice resulted. *See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). Prejudice requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Id.*

Archer combines his first and third arguments, as such, we address them together. *See* Appellant's Brief, at 6. Archer first claims trial counsel was ineffective for failing to file any pre-trial motions, specifically, a motion for a taint hearing. "[P]retrial exploration of taint … is necessary in those cases where there is some evidence that improper interview techniques, suggestive questioning, vilification of the accused and interviewer bias may have influenced a child witness to such a degree that the proffered testimony may be irreparably compromised." *Commonwealth v. Delbridge*, 855 A.2d 27,

- 4 -

35 (Pa. 2003). "An allegation that the witness's memory of the event has been tainted raises a red flag regarding competency, not credibility[,] and therefore "should occur within a competency hearing." *Id.* at 663-64. "When considering whether some evidence of taint has been presented we look to the totality of the circumstances surrounding the revelation of the allegations of child sexual abuse." *Id.* at 41. This Court has held that evidence of taint may come from

> the age of the child[,] the existence of a motive hostile to the defendant on the part of the child's primary custodian[,] the possibility that the child's primary custodian is unusually likely to read abuse into normal interaction[,] whether the child was subjected to repeated interviews by various adults in positions of authority[,] whether an interested adult was present during the course of any interviews[,] and [] the existence of independent evidence regarding the interview techniques employed.

*Commonwealth v. Judd*, 897 A.2d 1224, 1229 (Pa. Super. 2006).

Archer argues that his "trial counsel should have filed a motion for a taint hearing due to the inconsistencies of the child victim's testimony." Appellant's Brief, at 6. Archer also notes that the child was interviewed by multiple people, including two recorded forensic interviews. *See id.* at 12. The trial court found that this argument both lacked merit and that Archer did not prove prejudice resulted. We agree.

The trial court aptly noted, "the record is devoid of any evidence of improper interview techniques, suggestive questioning, vilification of the accused, or interviewer bias" that would justify the pretrial examination of taint. Trial Court Opinion, 11/16/22, at 13. Archer did not point to, nor could

- 5 -

we find in our independent review of the record, any evidence of a hostile motive on the part of the child's primary custodian at the time of disclosure, nor any evidence of improper interview techniques.

Moreover, as observed by the trial court, the question of taint goes to a child's competency to testify, not her credibility, and therefore, would be dealt with in a competency hearing if there were grounds to address the taint issue.

> Where an allegation of taint is made before trial the "appropriate venue" for investigation into such a claim is a competency hearing. In order to trigger an investigation of competency on the issue of taint, the moving party must show some evidence of taint. Once some evidence of taint is presented, the competency hearing must be expanded to explore this specific question. During the hearing the party alleging taint bears the burden of production of evidence of taint and the burden of persuasion to show taint by clear and convincing evidence. Pennsylvania has always maintained that since competency is the presumption, the moving party must carry the burden of overcoming that presumption … [A]s with all questions of competency, the resolution of a taint challenge to the competency of a child witness is a matter addressed to the discretion of the trial court. [**Commonwealth v. Delbridge** (**Delbridge I**), 578 Pa. at 664, 855 A.2d at 40-41.

PENNSYLVANIA BENCHBOOK ON CRIMES OF SEXUAL VIOLENCE, Ch. 7, pg. 15 (3rd Edition 2015).

Here, the court conducted an *in camera* competency hearing at which the victim was found competent to testify. **See id.** at 113. Following review, we agree with the trial court that there was no evidence or insinuation of taint. Therefore, the issue lacks merit and counsel cannot be found ineffective on this basis. **See Commonwealth v. McAfee**, 849 A.2d 270, 277 (Pa. Super.

2004) ("Counsel cannot be found ineffective for failing to raise a meritless claim.") (citation omitted).

Also, trial counsel testified at the PCRA hearing that when he spoke with Archer about filing a pre-trial motion for a taint hearing, counsel told Archer that "whether [the victim] was coached or not[,] she has changed her story[,] or anything like that" would be for the jury to decide. N.T. PCRA Hearing, 10/25/22 at 53; *see Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa. Super. 2013) (Inconsistencies are for the jury to determine, as credibility determinations are "solely within the province of the factfinder."). Counsel advised Archer that, in his professional opinion, filing a taint motion would not be appropriate. *See* N.T. PCRA Hearing, 10/25/22 at 53. Therefore, not only does the issue lack underlying merit, counsel had a reasonable basis for his decision not to pursue a taint hearing.

Next, Archer asserts that trial counsel did not sufficiently prepare for trial, including failing to "to spend sufficient time with him to discuss and prepare the case for trial," interview witnesses and review forensic videos of the victim that the Commonwealth would be presenting. Appellant's Brief, at 16.

First, Archer complains that trial counsel only met with him twice prior to trial *See id.* Archer cites to one case and the ABA Standards for the proposition that trial counsel shall investigate the case and meet with his client to discuss trial. *See id.* at 17. Notably, the case relied upon by Archer, *United*

*States v. DeCoster*, 487 F.2d 1197 (D.C. Cir. 1973), is not binding on this Court and was decided prior to *Strickland*.

Our Court has held that "[t]he length of time dedicated to client consultation affords no basis for inferring the extent of trial preparation." *Commonwealth v. Ellis*, 700 A.2d 948, 960 (Pa. Super. 1997). It is the petitioner's burden on a PCRA petition to show that counsel's deficient performance prejudiced him. *See Pierce*, 786 A.2d at 213. "[Prejudice] can be demonstrated by alleging beneficial information or issues that counsel should have presented had he been prepared adequately, which would have changed the outcome of the trial." *Commonwealth v. Elliott*, 80 A.3d 415, 432 (Pa. 2013) (citations omitted).

The credible evidence of record belies Archer's claim. Trial counsel testified at the PCRA hearing that he was appointed to Archer's case early the week before the trial week. *See* PCRA Hearing, 10/25/22, at 50. Counsel testified that, during the time he was appointed, he met with Archer for forty-five minutes at least three times. *See id.* They discussed the trial strategy of showing the events reported by the victim actually happened elsewhere. *See id.* at 56. Furthermore, as more discussed in detail below, counsel took considerable steps to prepare for trial during the week prior to trial. Archer has failed to plead and prove that this issue has underlying merit or that he was prejudiced by counsel's late appointment.

Archer next asserts that counsel was ineffective because he "did not view the [victim's] forensic videos until trial." Appellant's Brief, at 18 (emphases omitted). We disagree.

During the workweek prior to trial, counsel worked nights to prepare. The weekend before the trial, counsel met with the co-defendant's counsel to review discovery and prep for trial. *See* PCRA Hearing, 10/25/22, at 54. Counsel viewed the forensic videos at length that weekend. *See id.* Counsel also watched the videos with Archer prior to their being played at trial and counsel's cross-examination of the victim. *See id.* Counsel testified that he was prepared to cross-examine the victim about any discrepancies in her statements during the investigation and that, he did in fact examine her about "the different disclosures made on the stand versus on the video." *Id.* at 55. Finally, counsel stated that he was able to cross-examine the victim sufficiently about the video to show the jury that the victim also was abused at this other location. *See id.* at 57. Archer has failed to explain how he was prejudiced where counsel viewed the forensic videos, discussed them with Archer, and fully cross-examined the victim about them. Archer has failed to establish all three *Pierce* prongs in support of this allegation.

As to Archer's claim that counsel was ineffective for failing to interview and call Commonwealth witnesses,[3] we first observe that Archer makes no argument regarding which Commonwealth witnesses trial counsel should have spoken to and how the outcome of his trial would have changed if trial counsel had interviewed any of the Commonwealth witnesses prior to trial. As such, we find this claim waived. *See Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that claims that are not sufficiently developed in Appellant's brief are waived). Even if this allegation were not waived, no relief is due.

> In order to prevail on a claim that counsel was ineffective for failing to call a witness, a defendant is required to establish that: 1) the witness existed; 2) such witness was available to testify for the defense; 3) counsel knew of or should have known of the existence of the witness; 4) the witness was willing to testify for the defense; and 5) the absence of the testimony of such witness was so prejudicial as to have denied him a fair trial.

*Commonwealth v. Smith*, 675 A.2d 1221, 1230 (Pa. 1996). Archer did not present any witnesses other than himself at the PCRA hearing. Additionally, counsel testified that Archer spoke to him about calling potential witnesses from CYS who had been involved with the family prior to the events at issue in this case, but counsel decided that subpoenaing these individuals would not

---

[3] Although Archer refers to the proposed witnesses as "Commonwealth witnesses," our review of the record reveals that the proposed witnesses were from Fayette County Children and Youth Services (CYS) related to a prior family matter. *See* N.T. PCRA Hearing, 10/25/22, at 51-52; Appellant's Brief, at 18 (referring to "Tammy from Family First").

have been wise because they had no first-hand knowledge about the facts of this case. **See id.** at 51-52. Counsel explained that he discussed this strategy with co-counsel and they agreed that, because of the nature of this case, calling these witnesses would only highlight to the jury that CYS was involved with the family, which does not happen "unless there's alleged problems in the home." **Id.** at 52. Archer has failed to explain how he was prejudiced by Counsel's decision.

Therefore, we agree with the PCRA court that Archer has failed to plead and prove that counsel was ineffective in failing to properly prepare for trial, including spending sufficient time with Archer, interviewing witnesses, and reviewing the forensic videos.

Finally, Archer posits "trial counsel was ineffective for not raising a proper objection to the amendment of the information after the Commonwealth's case in chief." Appellant's Brief, at 19 (extraneous capitalization omitted). On day two of trial, the Commonwealth sought to amend the criminal information as to the date of the offense. Specifically, the Commonwealth was requesting a date range for the occurrences of the charged offenses, i.e., the summer of 2017, and asked the amendment to reflect "on or about June 1, 2017." **See** N.T. Trial, 7/9/19, Day 2, at 122. The original information had the date of "on or about 3/16/2018." **See** Criminal Information, 12/13/18. In its opinion filed on December 4, 2023, pursuant to Pa.R.A.P. 1925, the PCRA Court stated:

> This issue was addressed at the October 25th, 2022 PCRA Hearing. On Day Two of the Defendant's jury trial, Attorney DeMarco-Breeden moved to Amend the Criminal Information to reflect an " On Or About Date of June 1st, 2017." (The Criminal Information had read, " On or About March 16th, 2018"). Attorney Clark objected to the Motion on the record.

Trial Court Opinion, 12/4/23, at 9.

Therefore, trial counsel did object to the request to amend the information at the time of trial. *See* N.T. Trial, 7/9/19, Day 2, at 124 ("We would object, Your Honor. The Commonwealth had plenty of time to have a look at that, and we did request a Bill of Particulars, but ultimately we will leave that up to the Court. I just want to have that objection noted for the record."). Archer does not elaborate why this objection was not "proper." The trial court permitted the amendment:

> We don't see how there is any prejudice to the Defense. Certainly, the Discovery would have revealed that, and this occurred before September 27th, 2017, and I don't see how it could have affected adversely your preparation and, again, the only purpose for the date is to establish the age of the child being below age 13 at the time of the crime and that it was within the statute of limitations, and neither one of those issues arises from the amendment, so we will permit the amendment.

*Id.*

Archer did not pursue this issue on direct appeal. Because Archer did not raise this claim on direct appeal, we find this issue waived. *See* 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."); *Commonwealth v. Johnson*, 289 A.3d

959, 1020 (Pa. 2023) (finding a claim waived when it could have been raised on direct appeal, but was not).

Even if not waived, we would find this issue does not merit relief. The trial court found that Archer did not prove how he was prejudiced by this amendment. *See* Trial Court Opinion, 11/16/22, at 9. We agree.

Amendments to a criminal information are governed by Rule 564, which provides:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564. "Rule 564's purpose is to ensure that a defendant is fully appraised of the charges, and to avoid prejudice by prohibiting last-minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Belgrave*, 307 A.3d 1240, 1249 (Pa. Super. 2023). There are six factors that the court must consider in determining whether an amendment is prejudicial to the defendant:

> (1) Whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id.* The amendment only changed the date range of the alleged offenses, as such, factors (1), (2), and (4) are not implicated by the amendment.[4] With respect to factor (3), Archer does not present any argument that the amendment changed the factual scenario as it was developed at the preliminary hearing, and we were not provided with any notes from the preliminary hearing.

In reference to factor (5), Archer has not alleged how the amendment changed his defense strategy at the time of trial. Archer only avers that "[p]rejudice would be obvious. ... The innocence defense was no longer a viable defense." Appellant's Brief, at 21. Archer does not explain why the innocence defense was no longer a viable defense. In fact, Archer proceeded with an innocence defense at trial, even after the amendment, by attempting to show that the abuse occurred after the child had been placed in foster care. *See* N.T. PCRA Hearing, 10/25/22, at 56-57; N.T. Trial, 7/9/19, Day 2, at 155-158.

In addition, both the discovery and the testimony clearly indicated that the child victim had been removed from the home in September of 2017, and never returned to live with Archer following that removal. Therefore, Archer and trial counsel knew that the date in the original information, March 16, 2018, had to be in error.

---

[4] In his brief, Archer agrees that the amendment "did not change or alter the charges." Appellant's Brief at 20.

Notably, a close review of the trial transcript reveals that the date in the original information, March 16, 2018, was the date that CYS informed Archer, in person, that the child made these allegations. *See* N.T. Trial, 7/9/19, Day 2, 23-25; 154-155. Archer would have known that the abuse did not occur on March 16, 2018, but must have occurred prior to March 16, 2018. As such, Archer was not prejudiced by the amendment. As Archer continued to present a defense to the jury that he was innocent of the charges, he was not prejudiced by the amendment; counsel cannot be ineffective for failing to "properly" object.[5]

As the trial court did not err in finding Archer did not prove his claims of ineffective assistance of counsel, we affirm.

Order Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/4/2024

---

[5] We do agree that factor six weighs in Archer's favor. However, this factor alone does not establish prejudice.